WARREN PETROLEUM COMPANY, Appellant,

v.

Lacy S. THOMASSON, Appellee.

No. 17496.

United States Court of Appeals Fifth Circuit.

June 3, 1959.

**6**

Jack W. Flock, Donald Carroll, Tyler, Tex. (Ramey, Brelsford, Hull & Flock, Tyler, Tex., of counsel), for appellant.

Ben Johnson, Jack A. Jackson, Thomas W. Hathaway, Tyler, Tex. (Johnson, Hathaway & Jackson, Tyler, Tex., of counsel), for appellee.

Before JONES, BROWN and WISDOM, Circuit Judges.

JOHN R. BROWN, Circuit Judge.

Texas Highway Patrolman Lacy Thomasson sped through the night at 105 miles per hour pursuing a law violator. His patrol car hit a pickup truck, rolled over once, and he walked away from the wreckage. For his injuries he recovered a verdict of $16,500.

Warren Petroleum Company, the Defendant-Appellant-pickup truck owner, appeals as to (1) the Court's charge on negligence per se resulting from a statutory violation by Warren, and (2) the admission into evidence of Highway Patrolman Majors' statement to Warren's superintendent that Warren should assume liability.

Therefore, the facts may be briefly summarized. Thomasson, patrolling U. S. Highway 271 between Gladewater and Tyler, Texas on the evening of May 4, 1957, concluded that the driver of a

Pontiac was speeding. Moreover, he had out-of-state license plate—a circumstance of itself sufficient to arouse some suspicion in the mind of this Texas patrolman. The combination prompted Thomasson's ensuing chase. The Pontiac turned left (south) off of U. S. 271 onto Farm to Market Road 1803. Thomasson followed. FM 1803 is a semicircular stretch of three to four miles of blacktop around Tyler—sometimes called "the loop"—connecting U.S. 271 and the Old Longview Road, which also leads to town. There are two businesses (including Warren) and a trailer house and shack along the road. Thomasson had reached a speed of 105 miles per hour as he approached the Warren plant, and was gaining on the Pontiac. Although there is some dispute—necessarily resolved in Thomasson's favor by the verdict—as to whether the patrol car had its headlights and red warning light on, Thomasson admitted he had not turned on the siren. It was about 8:15 p. m. The Pontiac sped past the entrance to the plant. Thomasson followed. But before he, too, could get by the entrance, Warren's employee Driskoll, admittedly on company business, pulled onto FM 1803 in a pickup truck. There is dispute, of course, as to exactly how the accident happened, in whose lane, and wonder at why both drivers were not killed instantly. The left side of the pickup was only slightly dented, and the patrol car, brakes on, left the right side of the highway, rolled over one complete turn, and Thomasson stepped out. He then sued Warren for the neck injuries he sustained. After causing all of this, the initially suspicious Pontiac apparently went on its way uncaught and unidentified.

## I.

### Negligence Per Se

Section 74 of Tex.Civ.Stat. art. 6701d provides:

"The driver of a vehicle about to enter or cross a highway from a private road or driveway shall yield the right-of-way to all vehicles approaching on said highway."

Thomasson contends, and the Court charged, that violation of this provision constitutes "negligence as a matter of law."[1] Warren counters that it does nothing of the sort, that this statute provides only conditional, not absolute, standards, and that the common-law prudent driver standard must still be applied by the jury in assaying whether Warren's conduct was negligent. It cites Missouri-Kansas-Texas R. Co. v. McFerrin, 1956, 156 Tex. 69, 291 S.W. 2d 931; Dallas Ry. & Terminal Co. v. Black, 1953, 152 Tex. 343, 257 S.W.2d 416; our opinion in Merchant's Fast Motor Lines, Inc. v. Lane, 5 Cir., 1958, 259 F.2d 336; and several opinions from Texas Courts of Civil Appeals.

The leading Texas McFerrin case, Texas & N. O. R. Co. v. Day, Tex.1958, 316 S.W.2d 402, 403, which followed, and our Lane opinion all dealt with Section 86 of Article 6701d. Briefly, it provides that vehicles shall stop at railroad tracks whenever "(d) An *approaching* train is [1] *plainly visible* and is in [2] *hazardous proximity* to such crossing." [156 Tex. 69, 291 S.W.2d 934] (emphasis supplied) They concluded that "we apply the objective common-law test of the reasonably prudent man * * * before it can be said in a given case that an approaching train was (1) 'plainly visible' * * * [or] (2) 'in hazardous

1. The Court, after reading Section 74 to the jury, said:

"Now, the evidence is undisputed in this case that the driver, Driskoll, entered the highway 1803 on the occasion in question from a private road or driveway, namely, the road or driveway of Warren Petroleum Company leading into its plant there located at or near highway 1803. And if the driver, Driskoll, failed to yield the right of way to other vehicles approaching on said highway at the time he attempted to enter and did enter the highway on the occasion in question, such conduct on the part of the driver, Driskoll, would constitute a violation of the Section 74 of the statutes in question and would constitute negligence as a matter of law and I so charge you."

proximity' to a crossing * * *." Missouri-Kansas-Texas R. Co. v. McFerrin, supra, at 291 S.W.2d 936. Just so, in this case, Warren contends that under Section 74 the standard to be applied is whether a reasonably prudent driver would have seen an approaching vehicle, and, if so, whether its "approach" was such that he would have yielded the right-of-way.

Thomasson does not assume the formidable task of overturning McFerrin and demonstrating that the law generally in Texas is otherwise than what Warren represents it to be. Indeed, he affirmatively states in his brief, "the authorities collected and cited by Appellant represent the present state of the law insofar as the application of the common law standard to several other sections of the same traffic code is concerned, * * *." The distinction he seeks to make is that these sections, and the cases construing them, do not control a construction of Section 74. He contrasts the language in Section 74 with that in, for example, Section 73. The latter, regulating right-of-way at highway intersections, refers to "vehicles * * * approaching so closely * * * as to *constitute* an *immediate hazard*." (emphasis supplied) Section 74, on the other hand, refers simply to "all vehicles

approaching on said highway." In support of this contention Thomasson cites Austin Road Co. v. Thompson, Tex.Civ. App.1955, 275 S.W.2d 521, and Ditta v. Pogue, Tex.Civ.App.1952, 249 S.W.2d 938. Both of these cases dealt with Section 74 and with special issues which did not utilize the prudent driver test and thus *could have* presented the matters raised in the McFerrin case. However, such objections to the issues and charge were not made in these cases, they did not discuss the distinctions between § 74 and other sections, and thus they are not determinative of the issue before us. The Court in the Thompson case in fact assumed there *was* error in the issues—but then went on to find sufficient grounds of negligence elsewhere so as to render such error harmless.

■ This is an area of active and voluminous litigation in Texas. Perhaps the most recent discussion is that of Justice Norvell in Rudes v. Gottschalk, Tex.1959, 324 S.W.2d 201 [No. A–7012, substituted for withdrawn opinion of April 1, 1959, 2 Tex.S.Ct.J. 254], affirming Tex.Civ.App.1958, 315 S.W.2d 361. It may well be that even before this case can be retried, the Texas Courts will have determined that under § 74 or other comparable sections violation of the statute is negligence per se.[2] Until they

---

2. Two interesting law review articles have dealt with this subject. Vaughan, The Effect of the Uniform Traffic Act upon the Substantive Law of Torts in Texas, 26 Tex.L.Rev. 500 (1948) was written before any Texas cases had construed the Act. At 506–07 the author states:
   "It is not clear from the Texas cases whether a breach of the duty to yield at an intersection is negligence *per se* or not. One line of authority has held that it is, while another has held a reasonable interpretation of such a provision is necessary and whether a failure to yield is negligence depends on the circumstances. While the language is inconsistent, the cases can be reconciled on the principle that while an open and unquestionable violation of a right-of-way regulation generally constitutes negligence *per se* on the part of the unprivileged driver, the circumstances may be such as to render it a question for

the jury whether the duty arose. This will depend upon comparative speeds, relative distance from the intersection, the reasonable judgment of the drivers, and all of the surrounding circumstances."
   The author discusses Section 74 separately, notes its absence of an "immediate hazard" provision, but yet apparently concludes in the next paragraph that the ordinary care test is still applicable here, too (At 26 Tex.L.Rev. 508–09)
   Texas Supreme Court Justice Calvert, who wrote the Court's opinions in McFerrin and Day, also wrote "Special Issues Under Article 6701d, Section 86 (d), of the Texas Civil Statutes," 34 Tex. L.Rev. 971 (1956). Although this does not deal specifically with Section 74, he states, at 977, "It is very generally held that violation of a statute is excusable, and, therefore, is not negligence, if the violation is one that a reasonably prudent

do, however, we are bound by the principle of McFerrin and apply it in this case. The resulting, modified, issue for the jury on retrial [3] will then be, whether a reasonably prudent driver, under the circumstances that Warren's driver Driskell confronted, would have yielded the right-of-way to Thomasson's onrushing patrol car.

## II.

### Opinion Testimony

Warren also complains of the admission of testimony of both Lt. Majors and Sgt. Webb over its objection. Lt. Majors had been called to testify about the behavior of Thomasson before and after the accident, about the equipment found on a patrol car and its operation, and something about the physical surroundings where the accident occurred. Sgt. Webb was the patrolman who had investigated the accident and was called primarily to testify as to what he had seen. The testimony complained of relates to Lt. Majors' statements to employees of Warren to the effect that Warren should assume liability for the accident.[4]

Warren's objection to the testimony set forth in note 4 is "that such testimony was designed to, and did, effectively and emphatically inform the jury of an opinion of the witness Majors that [Warren] was *legally liable* for the accident."

Of course, there is dispute as to the extent to which experts may justifiably give the jury the benefits of their conclusions and opinions, and indeed—at times—over the means for distinguishing between fact and opinion. See McCormick, Evidence §§ 10–18, esp. § 12

---

person would have committed under the same or similar circumstances * * *."

Of course, neither these authors' statements, the cases cited by us, nor our holding today declare the abandonment of negligence *per se* in Texas as Thomasson fears. See generally McCormick and Ray, Texas Law of Evidence, § 5 (2d Ed. 1956) and 30B Tex.Jur., Negligence §§ 82–86 (1954).

**3.** The unavoidable uncertainty, as Texas develops the controlling legal principle in this active field, illustrates the utility of special interrogatories in the jury submission under F.R.Civ.P. 49, 28 U.S.C.A. See Clegg v. Hardware Mutual Casualty Co., 5 Cir., 1959, 264 F.2d 152, and L'Urbaine Et La Seine v. Rodriguez, 5 Cir., 1959, 268 F.2d 1. By suitable questions and instructions, specific determination by the jury under each theory can be recorded for application of the legal principle by trial or appellate court as Texas finally declares the law to be.

**4.** The testimony involved went as follows:
"Q. Was there any conversation between you and Mr. Martin, Superintendent of Warren Petroleum Company on the matter of who is responsible for that accident?
"A. [Lt. Majors] Yes, sir, I advised the gentlemen collectively that I thought that he should assume liability.
* * * * *
[Objection, colloquy, and overruling by court.]

"Q. Lt. Majors, the Court has ruled that you may go ahead and answer the question.
"A. I did inform the gentleman after we discussed the accident that I thought they should assume liability, and of course, we had an automobile torn up and they then answered that they were not in the position to assume or deny liability that they were merely attempting to get the facts in the case and find out what happened."
Sgt. Webb's testimony went as follows:
"Q. Was there any discussion between those people and you and Lt. Majors about the responsibility for that accident?
"A. The Lieutenant talked to them, I didn't.
"Q. Well, what did he say?
"A. He said—I don't remember his exact words—
* * * * *
[Objection, again overruled]
"Q. If you can remember the exact words, give them, and if you can't and remember the substance of it, Sgt. Webb, tell us that?
"A. I don't remember the exact words, Mr. Johnson, it would be an impossibility to do that, but I do remember the substance of the conversation was that the Lieutenant felt—in other words he asked them about the responsibility or damage to the patrol car and they told him that they had no right or no authority to make any such settlement or anything of that nature."

(1954) ; 2 McCormick and Ray, Texas Law of Evidence, §§ 1391–1436 (2d ed. 1956) ; and Morris, The Role of Expert Testimony in the Trial of Negligence Issues, 26 Tex.L.Rev. 1, 10–23 (1947). However, as McCormick points out in the noted Section 12, "Undoubtedly there is a kind of statement by the witness which amounts to little more than an expression of his belief as to how the case should be decided or as to the amount of damages which should be given or as to the credibility of certain testimony. Such extreme expressions as these all Courts, it is believed, would exclude." See also McCormick and Ray, supra, § 1423.

Without regard to whether Texas Courts should or do make any distinction between opinion testimony offered in court from the witness stand and that of out-of-court statements, see McCormick, supra, § 18, and McCormick and Ray, supra, § 1406, we are clear that Texas Courts would hold that Lt. Majors' testimony should not have been admitted. See, for example, Dallas Railway & Terminal Co. v. Bailey, 1952, 151 Tex. 359, 250 S.W.2d 379 (harmful error for court to admit bus driver's opinion that it was not "safe" to stop bus under conditions of that case) ; and Zepeda v. Moore, Tex. Civ.App.1941, 153 S.W.2d 212, 213, error dism'd ("a conclusion or opinion is no more admissible as a declaration than if offered as original testimony under oath").

■ The prejudicial and harmful effect of this inadmissible testimony, F.R. Civ.P. 61, is patent. Jurors do, and ought to have, great respect for public law enforcement officers. Most are familiar with the practice of traffic police to investigate automobile accidents with a view of determining administratively who was at fault. Here the witness had no personal interest at stake and the jury may well have looked upon this disinterested public servant as one uniquely equipped to assay and declare who was to blame. This was not a *fact*. It was an opinion—and a powerful opinion carrying considerable prestige. It in-troduced the judgment of another on the critical matter for jury resolution.

Thus do we conclude that the District Court erred in overruling Warren's objections to the testimony discussed.

Warren has also raised questions regarding the Court's failure to find negligence and proximate cause as a matter of law in Thomasson's failure to sound his siren and in his excessive speed.

■ Under the circumstances of this case, chasing a law violator as he was, and under the law expressed in Art. 6701d, Sections 24, 75, 131 and 133, we cannot find that this was error. Speed is justified when necessary to carry out the task of an emergency vehicle. And a siren specifically "shall not be used except when such vehicle is operated in response to an emergency call" and then only "when necessary to warn pedestrians and other drivers of the approach thereof." § 133(d) By their nature these actions were for the jury to appraise.

Reversed and remanded.