Leuna **SHEPPARD**, Appellant,

v.

Juanita **JUDKINS** et al., Appellees.

No. 8039.

Court of Civil Appeals of Texas, Texarkana.

Dec. 28, 1971.

Michael A. Hatchell, Ramey, Brelsford, Flock, Devereux & Hutchins, Tyler, for appellant.

William McDowell, Smith, Johnson & McDowell, Sulphur Springs, for appellees.

DAVIS, Justice.

The opinion handed down in this case on November 2, 1971, is withdrawn and the following is submitted in lieu thereof.

This is a damage suit filed as a result of a collision of two automobiles where two highways crossed each other at almost complete right angles with four stop signs requiring all traffic to stop before proceeding across the highway intersection. Plaintiffs-Appellees, Juanita Judkins and Adaline Murray, sued Defendant-Appellant, Leuna Sheppard, for damages for personal injuries and damages to their car as a result of the collision which occurred on November 23, 1969.

This is a controlled highway intersection case. The accident occurred at a place where Highway No. 67 intersects Highway No. 271 in the City of Mt. Pleasant, Titus County, Texas. At this intersection, Highway No. 67 is a two-lane highway running east and west. Highway No. 271 at the point of intersection is divided into a four-lane highway running north and south. Appellee, Judkins, was driving an automobile that belonged to Appellee, Murray, going east on Highway 67, when she reached the highway intersection. In obedience to the laws, she approached the intersection and brought the car to a complete stop. She looked to her left and to her right. She saw the car being driven by Appellant, which was approaching the intersection from the north, about one or two city blocks away. Both appellees testified that they knew that it was a four-way stop sign and it looked to them as if Appellant was going to stop in obedience to the law. They then proceeded to cross the highway. Appellant disregarding the laws that she must stop, drove her car into the side of the car being occupied by Appellees. Not only did the Appellees testify that they thought the Appellant was going to stop, but, also, Edgie Peoples, a sister of Appellant who was in the car with Appellant, testified that she, too, thought Appellant was going to stop. There are red flashing lights and four large stop signs; one at each of the four entrances to the highway intersection.

The case was tried before a jury. The jury answered all of the special issues in favor of the Appellees except Special Issue No. 16 in which it found that the Appellee, Judkins, proceeded into the intersection when it was not safe to do so without interference or collision with the Appellant's vehicle. The jury then exonerated the Appellee, Judkins, of any contributory negligence, by their answer to Special Issue No. 17 where it found from the preponderance of the evidence that such conduct was not negligence.

Since there is much to be said about the submission of the special issues at a controlled highway intersection, we will copy

the special issues as submitted to the Trial Judge and the jury's answer thereto. They read as follows:

### "SPECIAL ISSUE NO. 1

Do you find from a preponderance of the evidence that Leuna Sheppard failed to keep such a lookout as an ordinarily prudent person in the exercise of ordinary care would have kept under the same or similar circumstances?

Answer 'We do' or 'We do not.'

ANSWER: We do.

If you have answered the foregoing special issue 'We do' then answer the following issue; otherwise do not answer:

### "SPECIAL ISSUE NO. 2

Do you find from a preponderance of the evidence that such negligence, if any, was a proximate cause of the collision in question?

Answer 'We do' or 'We do not.'

ANSWER: We do.

### "SPECIAL ISSUE NO. 3

Do you find from a preponderance of the evidence that defendant Leuna Sheppard's failure to stop in obedience to the flashing red light on the occasion in question was negligence?

Answer 'We do' or 'We do not.'

ANSWER: We do.

If you have answered the foregoing special issue 'We do' then answer the following issue, otherwise, do not answer:

### "SPECIAL ISSUE NO. 4

Do you find from a preponderance of the evidence that such negligence, if any, was a proximate cause of the collision in question?

Answer 'We do' or 'We do not.'

ANSWER: We do.

### "SPECIAL ISSUE NO. 5

Do you find from a preponderance of the evidence that defendant Leuna Sheppard's failure to apply her brakes on the occasion in question was negligence?

Answer 'We do' or 'We do not'.

ANSWER: We Do

If you have answered the foregoing special issue 'We do', then answer the following issue; otherwise do not answer.

### "SPECIAL ISSUE NO. 6

Do you find from a preponderance of the evidence that such negligence, if any, was a proximate cause of the collision in question?

Answer 'We do' or 'We do not'.

ANSWER: We Do
"The driver of a vehicle approaching the intersection of a different street or roadway is required to stop, yield and grant the privilege of immediate use of such intersection in obedience to any stop sign, and, after so stopping, may only proceed when such driver may safely enter the intersection without interference or collision with traffic using such different street or roadway.

### "SPECIAL ISSUE NO. 7

Do you find from a preponderance of the evidence that the failure of Leuna Sheppard to yield to the vehicle driven by Juanita Judkins was negligence?

Answer 'We do' or 'We Do Not'.

ANSWER: We Do

If you have answered the foregoing special issue 'We do', then answer the following issue; otherwise, do not answer:

### "SPECIAL ISSUE NO. 8

Do you find from a preponderance of the evidence that the failure of Leuna Sheppard to yield to the vehicle driven

by Juanita Judkins was a proximate cause of the occurrence in question?

Answer 'We do' or 'We do not'.

ANSWER: We Do

## "SPECIAL ISSUE NO. 9

What sum of money, if any, if paid now in cash, do you find from a preponderance of the evidence would fairly and reasonably compensate Juanita Judkins for her injuries, if any, which you find from a preponderance of the evidence resulted from the occurrence in question?

You may consider the following elements of damages, if any, and none other:

a. Physical pain and mental anguish which she has suffered in the past.

b. Physical pain and mental anguish which, in reasonable probability, she will suffer in the future.

c. Loss of her earnings in the past.

d. Loss of earning capacity which, in reasonable probability, she will sustain in the future.

Answer in dollars and cents, if any.

ANSWER: $9,500.00

## "SPECIAL ISSUE NO. 10

Find from a preponderance of the evidence the reasonable expenses, if any, for necessary medical and hospital care received by Juanita Judkins in the past for treatment of her injuries resulting from the occurrence in question.

Answer in dollars and cents, if any.

ANSWER: $368.95

## "SPECIAL ISSUE NO. 11

What sum of money, if any, if paid now in cash, do you find from a preponderance of the evidence would be compensation for the reasonable expenses, if any, for necessary medical care which Juanita Judkins will, in reasonable probability, require in the future for treatment of her injuries resulting from the occurrence in question?

Answer in dollars and cents, if any.

ANSWER: $500.00

## "SPECIAL ISSUE NO. 12

What sum of money, if any, if paid now in cash, do you find from a preponderance of the evidence would fairly and reasonably compensate Adaline Murray for her injuries, if any, which you find from a preponderance of the evidence resulted from the occurrence in question?

You may consider the following elements of damages, if any, and none other:

a. Physical pain and mental anguish which she has suffered in the past.

b. Physical pain and mental anguish which, in reasonable probability, she will suffer in the future.

Answer in dollars and cents, if any.

ANSWER: $500.00

## "SPECIAL ISSUE NO. 13

Find from a preponderance of the evidence the reasonable expenses, if any, for necessary medical care received by Adaline Murray in the past for treatment of her injuries resulting from the occurrence in question.

Answer in dollars and cents.

ANSWER: $42.00

'MARKET VALUE' means the amount which would be paid in cash by a willing buyer who desires to buy, but is not required to buy, to a willing seller who desires to sell, but is under no necessity of selling.

## "SPECIAL ISSUE NO. 14

Find from a preponderance of the evidence the market value in Titus County,

Texas, of Adaline Murray's automobile immediately before the occurrence in question.

Answer in dollars and cents, if any.

ANSWER: $850.00

### "SPECIAL ISSUE NO. 15

Find from a preponderance of the evidence the market value in Titus County, Texas, of such vehicle immediately after the occurrence in question.

Answer in dollars and cents, if any.

ANSWER: $200.00

"You are instructed that the driver of a vehicle approaching the intersection of a different street or roadway is required to stop, yield and grant the privilege of immediate use of such intersection in obedience to any stop sign and, after so stopping, may only proceed when such driver may safely enter the intersection without interference or collision with traffic using such different street or roadway.

### "SPECIAL ISSUE NO. 16

Do you find from a preponderance of the evidence that on the occasion in question Juanita Judkins proceeded into the intersection when it was not safe to do so without interference or collision with the Sheppard vehicle?

Answer 'We do' or 'We do not'.

ANSWER: We Do

If you have answered the foregoing special issue 'We do' then answer the following special issue, otherwise do not answer it.

### "SPECIAL ISSUE NO. 17

Do you find from a preponderance of the evidence that such conduct, if any you have so found, was negligence?

Answer 'We do' or 'We do not'.

ANSWER: We do not

If you have answered the foregoing special issue 'We do' then answer the following special issue, otherwise do not answer it.

### "SPECIAL ISSUE NO. 18

Do you find from a preponderance of the evidence that such conduct, if any you have so found, was a proximate cause of the occurrence in question?

Answer 'We do' or 'We do not'.

ANSWER: ——————

### "SPECIAL ISSUE NO. 19

Do you find from a preponderance of the evidence that on the occasion in question Juanita Judkins started her vehicle from a stopped position at such a time when said movement could not be made with safety?

Answer 'We do' or 'We do not'.

ANSWER: We do not

If you have answered the foregoing special issue 'We do' then answer the following special issue, otherwise do not answer it.

### "SPECIAL ISSUE NO. 20

Do you find from a preponderance of the evidence that such conduct, if any you have so found, was negligence?

Answer 'We do' or 'We do not'.

ANSWER: ——————

If you have answered the foregoing special issue 'We do' then answer the following special issue, otherwise do not answer it.

### "SPECIAL ISSUE NO. 21

"Do you find from a preponderance of the evidence that such negligence, if any you have so found, was a proximate cause of the collision in question?

Answer 'We do' or 'We do not'.

ANSWER: ——————

### "SPECIAL ISSUE NO. 22

"Do you find from a preponderance of the evidence that on the occasion in question Juanita Judkins failed to keep such a

lookout as would have been kept by an ordinary prudent person in the exercise of ordinary care under the same or similar circumstances?

Answer 'We do' or 'We do not'.

ANSWER: We do not.

If you have answered the foregoing special issue 'We do' then answer the following special issue, otherwise do not answer it.

### "SPECIAL ISSUE NO. 23

"Do you find from a preponderance of the evidence that such failure, if any you have so found, was a proximate cause of the collision in question?

Answer 'We do' or 'We do not'.

ANSWER: ——————

### "SPECIAL ISSUE NO. 24

"Do you find from a preponderance of the evidence that on the occasion in question Juanita Judkins and Adaline Murray had a joint interest in the object and purpose of the trip and an equal right, expressed or implied, to direct and control each other in the operation of the vehicle?

Answer 'We do' or 'We do not'.

ANSWER: We Do."

We believe that the Trial Judge submitted the proper special issues for a controlled highway intersection collision. Even though we are guided by our constitution, statutes, rules of civil procedure and the common law of contributory negligence, we must follow the old common law that rests upon the principle that each individual member of our society is responsible for his own acts. Sometimes it shifts the cost of loss from the innocent primary victim to the person responsible for the loss. It all depends upon a determination of fault which can be viewed as a matter of justice between individuals. Sometimes the victim recovers as a matter of right, not because they have a case for public charity or a part of a social problem stemming from a sudden accident. The common law requires full compensation, or none at all, depending upon the question of fault.

Negligence per se is defined in 40 Tex. Jur.2d 442, Sec. 3, as follows:

"Certain kinds of negligence may be classified as negligence per se. For an act to be deemed negligence per se, it must have been done contrary to a statutory duty, or it must appear so opposed to the dictates of common prudence that it is very clear that no careful person would have committed it. In the absence of a law characterizing the actor's conduct as negligent, the issue whether he ought to have foreseen and prevented the calamity or was negligent is one to be determined by the jury by reference to the facts." See the authorities cited therein.

■ Of course, if another person is guilty of contributory negligence, as a matter of common law, they still cannot recover. The violation of any statute, ordinance, administrative order or basis of duty, is usually classified as negligence per se. In this case, the jury exonerated the Appellees of any contributory negligence, negligence per se, or negligence as a matter of law. The jury convicted the Appellant of negligence as a matter of law. 40 Tex.Jur. 2d 456–463, Sections 11–15 and the many cases cited therein. 38 Am.Jur. 827, Section 158 and the cases cited therein. See the Sections of Art. 6701d hereinafter cited.

The trial court entered a judgment in favor of the Appellees. Appellant has perfected her appeal and brings forward seven points of error.

By point 1, Appellant says the trial court erred in overruling her motion for judgment non obstante veredicto because the jury found that Appellee, Judkins, violated the statutory standard of care in response to Special Issue No. 16 and in violation of Section 71(a), Article 6701d, Vernon's Ann.Civ.St., since the answer amounted to a finding of negligence per se which, as a

matter of law, was a proximate cause of the collision in question; by point 2, the trial court erred in overruling her motion for judgment non obstante veredicto because the negligence per se of Appellee, Judkins, was imputable to Appellee, Murray, because they were on a joint venture; by point 3, the trial court erred in overruling Appellant's objections and exceptions to the fact that Special Issue No. 18 was conditioned upon an affirmative finding to Special Issue No. 17, because it deprived Appellant of an unconditional finding as to whether or not Appellee, Judkins' violation of Section 71(a), Art. 6701d, V.A.T.C.S., was a proximate cause of the collision in question; by point 4, the trial court erred in overruling Appellant's objections to the conditioning of Special Issue No. 20 upon an affirmative finding to Special Issue No. 19 because, Appellee, Judkins, started her vehicle from a stopped position when said movement could not be made with safety; by point 5, the trial court erred in overruling Appellant's objections and exceptions to the conditioning of Special Issue No. 21 upon an affirmative finding to Special Issue No. 20 as to whether or not Appellee, Judkins, started her vehicle from a stopped position when said movement could not be made with safety; by point 6, the trial court erred in overruling Appellant's motion to disregard the jury's answer to Special Issue No. 11, awarding Appellee, Judkins, $500.00 for future medical care, because there is no evidence to support the same; and, by point 7, the trial court erred in overruling Appellant's motion for new trial, because the jury's answer to Special Issue No. 11 is not supported by factually sufficient evidence.

The only Special Issue that we can find on controlled highway intersection cases will be found in Texas Pattern Jury Charges, Volume 1, hereinafter referred to as "PJC." In studying the special issues as set out in PJC, it has to be determined whether it has anything to do with the standard of care; or, the standard of conduct in behalf of different drivers of different vehicles. We think that Appellee,

Judkins, was trying to follow a standard of care. She was so conducting herself and the automobile she was driving so as to be in compliance with the law. Section 71, Art. 6701d as amended by the 61st Legislature, effective September 1, 1969, reads as follows:

"Vehicles approaching or entering intersection

"Sec. 71. (a) The driver of a vehicle approaching the intersection of a different street or roadway shall stop, yield and grant the privilege of immediate use of such intersection in obedience to any stop sign, yield right-of-way sign or traffic control device erected by public authority, and after so stopping, may only proceed thereafter when such driver may safely enter the intersection without interference or collision with traffic using such different street or roadway.

(b) The driver of a vehicle on a single lane street or roadway, or a street or roadway consisting of only two traffic lanes, upon approaching the intersection, not otherwise controlled by traffic signs or signals, of a divided street or roadway, or of a street or roadway divided into three or more marked traffic lanes, shall stop, yield and grant the privilege of immediate use of such intersection to vehicles on such other street which are within the intersection or approaching such intersection in such proximity thereto as to constitute a hazard and after so stopping may only proceed thereafter when such driver may safely enter the intersection without interference or collision with traffic using such different street or roadway.

(c) The driver of a vehicle on an unpaved street or roadway approaching the intersection of a paved roadway shall stop, yield and grant the privilege of immediate use of such intersection to any vehicle on such paved roadway which is within the intersection or approaching such intersection in such proximity thereto as to constitute a hazard, and after so

stopping may only proceed thereafter when such driver may safely enter the intersection without interference or collision with traffic using such paved street or roadway.

(d) The driver of a vehicle approaching the intersection of a different street or roadway, not otherwise regulated herein, or controlled by traffic control signs or signals, shall stop, yield and grant the privilege of immediate use of such intersection to any other vehicle which has entered the intersection from such driver's right or is approaching such intersection from such driver's right in such proximity thereto as to constitute a hazard and after so stopping may only proceed thereafter when such driver may safely enter such intersection without interference or collision with traffic using such different street or roadway.

(e) A driver obligated to stop and yield the right-of-way in accord with Sections (a), (b), (c) and (d) of Section 71, who is involved in a collision or interference with other traffic at such intersection is presumed not to have yielded the right-of-way as required by this Act."

Since this case will be decided under the provisions of Article 6701d, V.A.T.C.S., all of the Sections referred to in this opinion will be Sections of Article 6701d.

Sections 13(f), 6, 14, 18, 22, 26, 27, 29, 30, 31, 32, 33, and 35 clearly set out the rules and regulations for a controlled highway traffic intersection. Under these rules and regulations for stop signs and traffic signals to be erected on highways governing the traffic control at highway intersections, requires the driver of a motor vehicle to stop. The operator of the motor vehicle must stop, or they are guilty of negligence as a matter of law.

It seems that Appellee, Judkins, had obeyed the law in stopping at the stop sign and then in not proceeding until she thought she could do so safely. Appellant admits that she did not stop. This, is in addition to the three witnesses testifying that they, too,

thought the Appellant was going to stop, and showed an excuse on Appellee, Judkins', part that she could cross the highway safely.

Appellee, Judkins, had obeyed the law and had a right to asume that the other driver of the other motor vehicle would stop in obedience to the stop sign and the law. If Appellant had stopped her car in obedience to the stop sign and the law, the collision would not have occurred. Secs. 118 and 124. In the charge to the jury, the trial court, in Special Issue No. 3, asked the jury:

"Do you find from a preponderance of the evidence that Defendant, Leuna Sheppard's failure to stop in obedience to the flashing red light on the occasion in question was negligence?"

This Special Issue seems to be in keeping with PJC Special Issue No. 5.07 which reads as follows:

"Do you find from a preponderance of the evidence that on the occasion in question Defendant failed to stop before entering the intersection?"

Then, the trial court went on to inquire if such negligence was a proximate cause of the collision in question. *The jury found that it did.* In PJC, Special Issue No. 5.07 on Special Issue No. 2, we find the following special issue:

"Do you find from a preponderance of the evidence that such failure was a proximate cause of the occurrence in question?"

If we should hold that a violation of the provisions of new section 71(a) would be negligence per se, there may be circumstances raising the issue of justifications or excuse. In such an event, an issue or issues submitting excuse, or excuses, may be required. Christy v. Blades, Tex.Sup.Ct. (1969), 448 S.W.2d 107. Christy v. Blades, supra, is a railroad collision case, Secs. 86, 87 and 88, and is not governed by the law of controlled highway intersection cases.

We hold that the violation of the penal law at a controlled highway intersection is negligence per se; or, as a matter of law. It is governed by a standard of conduct without any regard to any rights of other people. Secs. 38, et seq., 39, 40, 118, 124, 143 and 144. We hold that Appellant failed to yield and grant the privilege of immediate use of the highway intersection because it is undisputed that she did proceed into the intersection without bringing her car to a complete stop. This mode of conduct was a violation of the penal laws of Texas. Under Sec. 71(e) it is presumed that she failed to yield the right-of-way. In this case, we hold the standard of ordinary care is applicable. The evidence was fully sufficient to support the jury's finding that Appellee, Judkins, was not guilty of any negligence at all. We think Appellee Judkins had a right to presume that the Appellant would obey the penal law, stop at the stop sign, and she could proceed across the highway intersection in safety. In doing so, she could proceed without any danger of a collision. The standard of conduct that was used by the Appellant was the sole cause of the collision.

As pointed out, in the above sections of Art. 6701d, V.A.T.C.S., each person approaching a controlled highway intersection is required to stop. Appellees approached the highway intersection first. In obedience to the law, Appellee Judkins stopped the vehicle she was driving. She looked to her left and to her right. She saw Appellant coming from the north about one or two city blocks away. She thought she could cross the highway safely because Appellant was supposed to stop the car she was driving before she entered the intersection of the highway because of the "stop sign." Appellee Judkins was not, however, required to foresee the forthcoming negligence of the Appellant. McWilliams v. Muse, (1957), 157 Tex. 109, 300 S.W.2d 643; Lewis v. Martin, Tex.Civ.App. (1938), 120 S.W.2d 910, writ refused.

It was Appellee Judkins' duty to reasonably understand what a prudent person, who knows and understands the rules and laws of right-of-way, must do under the circumstances. She was allowed to presume that the Appellant would obey the law and stop at the highway controlled intersection. There is a most interesting article in 44 Texas Law Review 1 on "Submission of Issues in Uncontrolled-Intersection Highway Collision Cases in Texas," including a related discussion of some recent trends in the negligence per se doctrine, by William O. Neal and William A. Paddock, under the instructions of Chief Justice Robert W. Calvert, Supreme Court of Texas, under Article 6701d, Sec. 71, V.A.T.C.S.

It is not even contended in this case that the parties reached the intersection at or about the same time. There definitely was not a violation of the law on the part of Appellee, Judkins. There was a violation of the law by Appellant. Appellant relies upon the case of Christy v. Blades, supra. If the Courts must come to grips with the Texas law of "Negligence Per Se," we will do so. Having done this already, we hold the issues as submitted by the Trial Judge were proper. Appellees were entitled to a jury verdict as to any excuse which they might have had as to any wrong done on behalf of the Appellant. The jury having exonerated the Appellees of any contributory negligence that was the cause of the collision in question, we think that was the cause of the collision in question, and we think that Appellant's points 1, 2, 3, 4, and 5 should be overruled. Hammer v. Dallas Transit Company, (Tex.Sup.) (1966), 400 S.W.2d 885; Holland v. Collins, Tex. Civ.App. (1970), 457 S.W.2d 177, n. r. e.; Sears Roebuck & Company v. Stiles, Tex. Civ.App. (1970), 457 S.W.2d 580. It seems that Appellant did not make proper objections to Special Issues No. 17, 18, 20, and 21, as required by Rule 274, Texas Rules of Civil Procedure.

We will briefly point out that there was some evidence and the evidence is sufficient, for the jury to award Appellee, Judkins, Five Hundred ($500.00) Dollars for future medical care. Edens-Birch Lumber

Company v. Wood, Tex.Civ.App. (1940), 139 S.W.2d 881, er. dis., judg. cor. Appellant's points 6 and 7 are overruled.

We will say this about the common law negligence issues as to a reasonable excuse on the part of anyone involved in an automobile collision case, especially where the collision occurs at a controlled highway intersection. In this case, the jury under proper special issues, exonerated Appellee, Judkins, of any negligence per se; or, any contributory negligence. It actually convicted the Appellant of negligence per se when she ran the stop sign at the controlled intersection. We find the evidence sufficient to support the jury's answer to the excuse issues as submitted to it by the Trial Judge.

The judgment of the Trial Court is affirmed.

RAY, Justice (concurring).

I concur with the result reached by Justice Davis in his opinion, but for different reasons.

This is a controlled intersection case and it is the first case construing Section 71(a) of Article 6701d as amended by the 61st Legislature of Texas.

The crucial issue in this case is the construction to be given Section 71(a) of Article 6701d, Texas Revised Civil Statutes (1925), as amended by acts of the 61st Legislature, effective September 1, 1969. The pertinent part of Article 6701d is as follows:

"Vehicles approaching or entering intersection.

Sec. 71(a) The driver of a vehicle approaching the intersection of a different street or roadway shall stop, yield and grant the privilege of immediate use of such intersection in obedience to any stop sign, yield right-of-way sign or traffic control device erected by public authority, and after so stopping, may only proceed thereafter when such

driver may safely enter the intersection without interference or collision with traffic using such different street or roadway."

An examination of 1 Texas Pattern Jury Charges, 161, Sec. 6.01, indicates that the committee that drafted the special issues to be submitted in conjunction with Sec. 71(a) of Article 6701d expressed no opinion on whether Sec. 71(a) establishes a standard of conduct, the violation of which would be negligence per se, or whether the amended statute establishes a standard of care.

It is my conclusion that Sec. 71(a) of Article 6701d establishes both a standard of conduct and a standard of care at an intersection at which all entrances to the intersection are controlled by stop signs or red flashing signals, such as the facts are shown to be in the present case. The standard of conduct is that all persons must stop when reaching the intersection. The failure to stop is a breach of a statutory duty, the violation of which constitutes negligence per se.

That portion of Sec. 71(a) which states: ". . . and after so stopping, may only proceed thereafter when such driver may safely enter the intersection without interference or collision with traffic using such different street or roadway," constitutes a standard of care, the violation of which does not constitute negligence per se. That portion of the statute lays down a rule of care which in its very nature is relative to, and dependent upon, the factors making for danger. It does not require the driver of a vehicle, once he has stopped, to await the passage of every car which may be approaching from his right or his left, irrespective of its distance from the intersection, its speed, and the probable conduct of the driver. The statute imposes a standard of care upon the party entering the intersection to view all of the factors affecting safety and to determine if there is a reasonable apprehension of danger of a collision if he

should proceed to cross the intersection ahead of an oncoming vehicle. In making his observation of the factors making for such danger, and in reaching his conclusion on whether or not he can enter the intersection without interference or collision with traffic using a different street or roadway, he is bound to use the care of an ordinarily prudent man. It is not the exact or mathematical situation, but the apparent situation, obvious to a man of ordinary prudence, reasonably observant, that must control his judgment and determine the right of precedence. In short, the invocation of the statute raises an issue of fact as to whether or not a man of reasonable prudence, after stopping, could thereafter proceed into the intersection without interference or collision with traffic using a different street or roadway. Accordingly, I would apply the objective common law test of the reasonably prudent man and hold that before it can be said in a given case that a motorist, who had first stopped, proceeded into the intersection when it was unsafe to do so, it must appear, as a matter of law from all of the attendant and surrounding circumstances, that a reasonably prudent person so situated and exercising ordinary care for his own safety, would not have done so. Missouri-Kansas-Texas Railroad Co. of Texas v. McFerrin, 156 Tex. 69, 291 S.W.2d 931 (1956).

The trial court in the instant case had before it the question concerning standard of care. The Plaintiff-Appellee Judkins had stopped at the stop sign facing her. Appellant Sheppard failed to stop at the stop sign, thus leaving only the question of the care exercised by Appellee.

Since I would construe Sec. 71(a) of Article 6701d as establishing a standard of care relative to when a motorist may proceed into an intersection after stopping, it is my conclusion that Special Issue No. 16 as submitted to the jury was inquiring about certain facts and the answer to such issue amounted only to an evidentiary finding which would not by itself establish that Appellee Judkins was guilty of negligence per se.

Appellant insists that the answer to Special Issue No. 16 in finding that Appellee Judkins proceeded into the intersection when it was unsafe to do so establishes the element of the offense under Sec. 71(a) which entitles Appellant to a judgment in her favor as a matter of law, unless Appellee Judkins requests special issues, which if answered in her favor would excuse or justify her actions in proceeding into the intersection when she did. Appellant contends that the jury need not answer an issue inquiring about the common law negligence of Appellee Judkins until the jury has answered issues exonerating or excusing the actions of Appellee Judkins in entering the intersection when the jury had already found that it was unsafe to do so. If the jury should excuse the conduct of Appellee Judkins, then it would be incumbent upon Appellant Sheppard to get a finding that Appellee Judkins was guilty of negligence at common law in order for Appellant to prevail and defeat the recovery of Appellee by establishing that Appellee was guilty of contributory negligence. Of course, Appellant would have to obtain a finding that the negligence of Appellee was a proximate cause of the collision in order to finally prevail, unless the proximate cause was established as a matter of law. To support her contentions, the Appellant quotes at page 411 in Christy v. Blades, 448 S.W.2d 107 (Tex.Sup.1969), the following language:

> " * * * To establish a violation of Article 6701d, § 86(d), the railroad is required to prove conclusively or obtain findings that a train was approaching, was plainly visible and in hazardous proximity to the crossing, and that the motorist either failed to stop as required by the statute, or after having stopped, proceeded before he could do so safely. These are the elements of the offense. Once they are established and in the ab-

sence of circumstances amounting to legal justification or excuse, the motorist is guilty of negligence as a matter of law."

I am persuaded that in the present case, it was not mandatory for Appellee Judkins to request the court to submit an excuse issue because that portion of Section 71 (a) stating that a driver, after stopping, may only proceed thereafter when such driver may safely enter the intersection without interference or collision with traffic using such different street or roadway, establishes a standard of care which is tested by the "ordinary prudent man" test. If the last portion of Sec. 71(a) had established a standard of conduct, then it would have been necessary for Appellee Judkins to have requested and received a favorable answer from the jury excusing her actions in entering the intersection when it was unsafe to do so.

Special Issue No. 16 would have been better submitted, in my opinion, if the trial court had informed the jury that the "ordinary prudent man" test was to be applied. However, it was not necessary to submit both Special Issue No. 16 and Special Issue No. 17 in the manner provided for by the trial court. Special Issues No. 16 and 17 could have been combined into one issue with the instruction as set out in 1 Texas Pattern Jury Charges, 161 Sec. 6.01, because it is presumed as a matter of fact, that in this instance Appellee Judkins failed to yield and grant the privilege of immediate use of such intersection as set out in Sec. 71(e) of Article 6701d because she got hit while proceeding through the intersection. Sec. 1 P.J.C. 163, Sec. 6.01, "Failure to Yield." I do not think that Special Issue No. 16 was so misleading as to confuse the jury, and since the jury exonerated Appellee Judkins of any negligence in Special Issue No. 17, I feel that it is of no consequence that the trial court failed to tell the jury they were to apply the "ordinary prudent man" test. I would recommend that Special Issues No. 16 and 17 be combined into one issue with the ap-

propriate instruction set out in Sec. 6.01, supra.

The trial court was correct in submitting a negligence issue as it did when it submitted Special Issue No. 17, immediately following the standard of care issue (Special Issue No. 16). The trial court was further correct in conditioning the proximate cause issue (Special Issue No. 18) on an affirmative finding to the negligence issue (Special Issue No. 17). Kelley v. Goodrum, 378 S.W.2d 935 (Tex. Civ.App. Houston 1964, no writ); Warren Petroleum Co. v. Thomasson, 268 F. 2d 5 5th Cir. 1959; Booker v. Baker, 306 S.W.2d 767 (Tex.Civ.App. Dallas 1957, wr. ref'd, n. r. e.); Rash v. Ross, 371 S.W. 2d 109 (Tex.Civ.App. San Antonio 1963, wr. ref'd, n. r. e.), as it applies to the "Ritche Judgment;" Hemphill v. Meyers, 469 S.W.2d 327 (Tex.Civ.App. Austin 1971).

In Structural Metals, Inc., v. Impson, 469 S.W.2d 261 (Tex.Civ.App. Corpus Christi 1971), the court concluded that if the statute involved is a "thou shalt not" statute or a statute that establishes a standard of conduct, the violation of which constitutes negligence per se, then once the jury has found that a party has by his actions violated the statute, it becomes incumbent upon that party to obtain favorable findings excusing his conduct in order to avoid losing the case on a negligence per se issue. If this same party obtains a finding excusing his actions in violating the statute, he may still be guilty of negligence at common law if the jury should so find.

It is my construction of the *Impson* case, supra, that the Court concluded that if the statute that was violated is one that establishes a standard of *care*, then the special issues should be submitted as follows:

1. An inquiry about the actions of the party accused of violating the statute in terms of the "ordinary prudent man" test.

2. The negligence issue (or a combining of issues 1 and 2 into a single negligence issue with the appropriate instruction as outlined in Section 6.-01, P.J.C., as illustrated by Issue No. 1 at page 161).

3. The proximate cause issue conditioned upon an affirmative finding to the preceding negligence issue.

4. The damage issue, conditioned upon an affirmative finding to the preceding proximate cause issue.

See Hemphill v. Meyers, supra, setting out the required issues under a standard of *care* statute.

If the statute that has been violated is one which establishes a standard of *conduct*, the violation of which is negligence per se, then the issues should be submitted as follows:

1. An inquiry to determine if the first party acted in such a manner as to be guilty of doing that which the statute prohibits.

2. The proximate cause issue, conditioned on a finding that the statute had been violated in answer to Special Issue No. 1.

3. First party's excuse issue (if properly raised), conditioned on an affirmative answer to Special Issue No. 2.

4. If Special Issue No. 3 is required to be answered and there is an affirmative finding excusing the actions of first party then the next issue would be one on whether or not first party's actions constituted common law negligence.

5. If there was an affirmative finding that first party was guilty of common law negligence, then the jury should be asked whether such negligence was a proximate cause of the collision.

See Christy v. Blades, supra; Hammer v. Dallas Transit Co., 400 S.W.2d 885 (Tex. Sup.1966); Phoenix Refining Co. v. Powell, 251 S.W.2d 892, 896–897 (Tex. Civ.App. San Antonio 1952, wr. ref'd, n. r. e.).

I do not want to imply that I am in agreement with the majority holding in the Impson case, because I am not. I am only in agreement as far as the manner in which the special issues should be submitted as I have above outlined. The majority opinion in Impson holds that a violation of Article 6701d, Sec. 57 (driving on the left side of a roadway when approaching within 100 feet of an intersection) is a violation of a standard of care. My construction of Sec. 57 would be that it establishes a standard of conduct.

It is not always easy to determine whether a particular section of Art. 6701d establishes a standard of care or a standard of conduct. I am persuaded that if the statute leaves a person to exercise his judgment such as, he may proceed when it is safe to do so, then the statute establishes a standard of care. However, if the statute provides that all persons shall stop in obedience to the red flashing light facing them at an intersection, it is one that leaves no discretion, nor does it leave an exercise of judgment on the part of the driver, and is therefore a standard of conduct statute.

In the *Booker* case, supra, the Appellants (Defendants) contended that the trial court erred in rendering judgment non obstante veredicto because the jury had found that the Plaintiff had violated the provisions of Art. 6701d, Sec. 68(a) and Sec. 72, Vernon's Annotated Civil Statutes, which violations Appellants contended constituted negligence as a matter of law, and were the proximate cause of the collision. The Dallas Court of Civil Appeals disagreed and stated,

"We do not agree with appellants that the jury's answers to issue A amounted to a finding that Mrs. Baker had violated

the named statute, or that she was for that reason guilty of negligence per se.

"In our opinion Articles 6701d, sec. 68a and sec. 72, come within the class of statutes in which the common-law standard of the reasonable prudent man must be used in determining as a matter of fact, not as a matter of law, whether the conduct of a motorist is negligent. The duties imposed by these particular statutes are not absolute, they are conditional. They do not dispense with the necessity of a finding of fact as to whether the conduct of a motorist was negligent under the circumstances.

The court further concluded that even though the Plaintiff, Mrs. Baker, was found to have made a left-turn when she could not do so with safety because the car driven by Booker (Defendant) was so close to the intersection as to constitute an immediate hazard, the court held that Mrs. Baker (Plaintiff) was exonerated when the jury found that her conduct did not constitute negligence.

In the instant case, the jury found that Appellee Judkins had entered the intersection when it was unsafe to do so, but exonerated her of negligence by its answer to Special Issue No. 17 (the negligence issue). It is therefore my conclusion that no differences exist between the holding in the Booker case and the determination of the present case. Thus I would hold that an affirmative answer to Special Issue No. 16 was not a finding of negligence per se, nor the violation of a standard of conduct, but on the contrary was a determination of fact that did not amount to anything but a violation of a standard of care. Even though the jury found that Appellee had violated a standard of care, it failed to find such conduct to be negligence.

For the foregoing reasons, I believe that the judgment of the trial court should be affirmed.

CHADICK, Chief Justice (concurring).

The next to last paragraph of Judge Ray's concurring opinion coincides generally with my view of the question therein discussed. I agree that the judgment of the trial court should be affirmed.