**DALLAS TRANSIT COMPANY, Appellant,**

v.

**James TOLBERT et al., Appellees.**

**No. 13618.**

Court of Civil Appeals of Texas.

San Antonio.

June 29, 1960.

Rehearing Denied Aug. 1, 1960.

. Turner, White, Atwood, McLane & Francis, Dallas, for appellant.

Carter, Gallagher, Jones & Magee, Ben T. Warder, Jr., Leachman, Gardere, Akin & Porter, J. Carlisle Dehay, Jr., Dallas, for appellees.

BARROW, Justice.

This is a damage suit filed by James Tolbert and Harold C. Richardson, Inc., against Dallas Transit Company, for personal injuries to Tolbert and property damages suffered by Richardson, Inc. The case was tried to a jury and upon the verdict judgment was rendered in favor of Tolbert for his damages against Dallas Transit Company, and in favor of Harold C. Richardson, Inc., for its damages against Dallas Transit Company.

The pertinent facts are as follows: On the morning of April 18, 1958, at about 9:15, James Tolbert, an employee of Roadway Express, was driving a truck-trailer combination vehicle leased by Roadway Express from Harold C. Richardson, Inc. on North Central Expressway in the City of Dallas, during a misting rain. The equipment and load weighed approximately 54,000 pounds.

The Expressway in the vicinity is a divided highway running north and south. On the west side it is composed of three lanes for southbound traffic, and on the east side, three lanes for northbound traffic. Between the lanes for the southbound and northbound traffic there is a concrete divider or median which is elevated above the level of the roadways and is bordered on each side by a concrete curb. On each side of the Expressway there is a service road which runs parallel therewith. These service roads are separated from the main Expressway by grass median strips with concrete curbs on each side. About a block north of the place of the accident the Expressway has an overpass which goes over Hall Street. From the Hall Street Overpass proceeding south there is a down-hill incline to the place of the accident at an inlet road running at a slight angle from the service road to the southbound expressway.

Immediately before the accident the truck was proceeding south on the most westerly traffic lane at about forty miles per hour. A bus belonging to and operated by appellant, Dallas Transit Company, was proceeding south on the service road west of the Expressway. The bus was ahead of the truck but was traveling slower and the truck was overtaking it, and when the bus reached the inlet road it turned thereon and entered the Expressway in front of the truck. Just as soon as the bus entered the Expressway, about fifty feet in front of the truck, Tolbert applied the truck brakes and attempted to turn to his left in order to avoid hitting the bus. The truck jackknifed, thus turning the tractor part com-

pletely around until it faced in the opposite direction alongside the trailer part. In that condition the truck skidded diagonally down and across the southbound Expressway in a southwesterly direction, first striking the median island, then onto the northbound Expressway, until it collided with a northbound automobile driven by William L. Cowley in the middle traffic lane of the northbound Expressway.

■ By its first point appellant contends that the court erred, (1) in refusing to permit the reading of its Exhibit No. 11 to the jury, containing extracts from Dallas City Ordinances with reference to rules of right-of-way, and (2) in failing to instruct the jury as to the law with reference to the rules of right-of-way. The point must be overruled.

The court submitted to the jury only one right-of-way issue:

"Special Issue No. 10: Do you find from a preponderance of the evidence that at the time, place and occasion in question Plaintiff James Tolbert failed to timely yield right-of-way to defendant Dallas Transit Company's bus?"

In connection with this issue the court defined the term "timely yield right-of-way" as follows: "You are instructed that by 'timely yield right-of-way' is meant the yielding of the right-of-way in such time as a person of ordinary care and prudence would have yielded it under the same or similar circumstances," being a substantial compliance with the statute. Art. 6701d, § 20, Vernon's Ann.Civ.Stats. Thus the court did not leave to the jury the determination of the mixed question of law and fact as to who had the right-of-way under the facts and circumstances, but determined as a matter of law that appellant's bus had the right-of-way. The question submitted assumes that the bus did have the right-of-way. The effect of the question is to so instruct the jury. Certainly, the appellant could not have suffered injury in any way by the court's action. Rule 434, Texas Rules of Civil Procedure.

Appellant argues that in any event it should have been permitted to read to the jury its Exhibit No. 11, in order to rebut the testimony of appellee Tolbert that he had the right-of-way, and that appellant's bus did not. Certainly, if appellees had proved by Tolbert, over appellant's objection, his conclusion of law as to who had the right-of-way, it would have been error. It is elementary that the jury receives the law from the court and not from the witnesses. However, here we find from the record that the conclusions of law of the witness Tolbert were first injected into the case by appellant on cross-examination of the witness. On numerous occasions throughout cross-examination the witness was asked by appellant's counsel not only for his opinion as to who had the right-of-way, but as to his rights and duties with reference thereto. It is apparent that appellant brought about its own predicament and is not in a position to complain. We are of the opinion that appellant's first point is without merit.

By its second point appellant contends that the court erred in refusing to submit to the jury its requested Special Issues Nos. 1–A, 1–B, 1–C, 2–A, 2–B, 2–C. Issue 1–A inquired if James Tolbert failed to yield the right-of-way to the automobile driven by William Cowley. One–B inquired if such failure was negligence. One–C inquired if such negligence was a proximate cause of the injuries complained of. Issue 2–A inquired if Tolbert drove the truck onto the left-hand side of the highway "instead of the right-hand side of the highway." Two–B inquired if such action was negligence. Two–C inquired if such action was a proximate cause of the injuries complained of.

■ The evidence conclusively establishes the fact that when the truck jack-knifed, with the driver riding backward in the cab, it skidded entirely out of control from that point on the southbound traffic roadway over to the left-hand side, and thence on and across the median island and onto the northbound traffic roadway where it collided with the Cowley automobile.

The rule has been stated in 42 C.J. 932, Motor Vehicles, § 644, as follows:

"* * * an operator who has lost control of his car is not responsible for what happens thereafter unless his negligence in the management of the car was the cause of his loss of control." See also 60 C.J.S. Motor Vehicles § 298.

See Renner v. National Biscuit Co., Tex. Civ.App., 173 S.W.2d 332.

The evidence shows conclusively that at the time the truck jack-knifed and went out of control it was on the extreme right-hand side of the southbound roadway (his right-hand side). The evidence further conclusively shows that the truck jack-knifed as a result of the driver, Tolbert, attempting to turn to his left and at the same time applying the truck brakes, together with the wet slippery condition of the pavement. The trial court submitted to the jury all the acts of both parties which were alleged to have caused the jack-knifing. Thus the conclusion is inescapable that if Tolbert, the driver of the truck, is to be held responsible for the truck skidding over to the northbound traffic lanes, it must be because of some act of negligence which occurred prior to the jack-knifing of the truck.

Appellant relies principally on the opinion in Phoenix Refining Co. v. Powell, Tex. Civ.App., 251 S.W.2d 892. We do not regard that case as in point. In that case all the witnesses were killed in the collision. It was also shown that the truck gradually swerved over onto the left side of the road. The photograph of the scene showed a wide tire mark extending from the right over to the left side of the highway before the point of impact, which the court held raised the issue of fact as to whether the truck, being on the left side of the road, was beyond the control of the operator. In the instant case the evidence is undisputed. Moreover, if it could be said that the driver could have controlled, or resumed control of the truck before it hit the median island, the facts are undisputed that when the truck hit the island the driver was knocked loose from the steering wheel, out of his seat, and down onto the floor of the cab. There was no evidence to show that the driver had control at the time the truck went over to the left side of the road. See, Renner v. National Biscuit Co., supra. Therefore, it is apparent that the truck, both at the time it went over on the left-hand side of the highway and at the time it failed to yield the right-of-way to the Cowley car was out of control, and unless Tolbert's loss of control was due to some act of negligence on his part, which occurred prior thereto, he would not be responsible. The trial court having submitted to the jury issues covering every alleged act of negligence which could have brought about the jack-knifing of the truck, these issues submitted every act for which the driver of the truck could be responsible. The court did not err in refusing the requested issues.

In view of the fact that appellant's fourth point is closely related to its second point, above discussed, we shall next consider the fourth point wherein appellant complains of the ruling of the court in refusing to submit to the jury its requested special issues Nos. 3 and 5. Requested Issue No. 3 sought to inquire whether the sudden jack-knifing of the Tolbert truck was not the sole proximate cause of the collision of the truck and the Cowley automobile. Requested Issue No. 5 was identical in wording, except that it inquired whether the jack-knifing of the truck on the west street was not such sole proximate cause. These issues were properly refused.

The jury found in answer to special issues the following facts: (1) That the driver of the bus failed to keep a proper lookout. (2) That such failure was a proximate cause of the collision. (3) That the driver of the bus proceeded onto Central Expressway before it had become reasonably safe for him to do so. (4) That such action was negligence. (5) That such negligence was a proximate cause of the collision. (6) That the driver of the truck turned the truck to the left within such time as a person of ordinary

prudence would have turned it. (7) That the driver of the truck did not fail to timely apply his brakes. (8) That the driver of the truck did not fail to keep a proper lookout. (9) That the driver of the truck did not fail to keep the truck under proper control. (10) That the driver of the truck did not fail to timely yield the right-of-way to appellant's bus. (11) That the driver of the truck was not operating the truck at a speed which was excessive under the circumstances then existing. (12) That the injuries to appellee James Tolbert were not the result of an "unavoidable accident."

The well settled rule in Texas has been stated in International-Great Northern R. Co. v. Acker, Tex.Civ.App., 128 S.W.2d 506, 521, as follows:

"The issue of sole proximate cause of an injury as distinguished from a proximate cause simply does not arise when the suit is between the injured party or those in privity with him and the person inflicting the injury, but such an issue can only arise where it is claimed that the act of a third party was a proximate cause.

"It seems to us that such issue of sole proximate cause presupposes that the injury is attributable to a third party, unavoidable accident or extraneous happening, etc., and if the injury was attributable to such third party, or he was the sole proximate cause thereof, it would be immaterial whether the act as to the third party was negligence upon his part or not."

The rule was quoted and followed in Panhandle & Santa Fe Ry. Co. v. Ray, Tex. Civ.App., 221 S.W.2d 936.

As we have stated above, it is clear that the truck up to the time it jack-knifed was under the control of Tolbert, a party to the suit. Therefore, the jack-knifing was not the act of some third party. The requested issue obviously embraced a combination of the two causes, i. e., the wet street and the operation of the truck. In order for the issue to come within the rule above stated, it should refer only to the act of a third party on an extraneous happening. At most the issue should have been confined to the wet condition of the street as such a cause. The effect of the issue, as framed, was to inquire if some act of the truck driver, together with the wet condition of the street was the sole proximate cause. Moreover, we note that appellant did not request an issue inquiring if the wet pavement was the sole proximate cause. The issues requested by appellant were properly refused. We have not been unmindful of the rule stated by the Supreme Court in Schuhmacher Co. v. Holcomb, 142 Tex. 332, 177 S.W.2d 951, but we have considered the same in the light of conditions existing when the charge was given and not after the verdict.

By its third point appellant contends that the court erred in instructing the jury that they could award Tolbert money for future loss of earnings, because there was no pleading and insufficient evidence, or no evidence, that he would in reasonable probability suffer such loss; and that the jury's award is so grossly excessive as to show bias and prejudice.

The first contention must be overruled. It appears from the record that appellant did not except to the court's charge on such ground, therefore, the complaint is waived. Rule 274, T.R.C.P. As for the second contention, we have carefully examined the record and have reached the conclusion that the amount of the verdict, $17,120, for personal injuries to Tolbert, is not excessive.

The trial court instructed the jury that they might consider four elements of damages, i. e., past and future loss of earnings, and past and future pain and suffering.

Tolbert suffered a whiplash injury. The evidence shows that from the time of the injury, or shortly thereafter, he has suffered from constant pain in his head, base of skull, neck, shoulder and down his right arm. That he has received treatment from six different doctors; that on two occa-

**622**

sions he had to lay off his job and remain in traction for several days; that the pain is continuous except when he is under the effect of sleeping pills. That he lost a total of fifty-two days' work from the date of the accident until the date of trial, a period of fourteen months. That he has been driving the truck through necessity and against the advice of his doctors in order to provide for his family. That when he drives he has to wear a surgical collar. That he was earning the sum of $165 per week. Dr. Edward Krusen, who gave the only medical testimony in the case, testified that he examined Tolbert the last time one week before the trial, and the patient had a cervical syndron with muscular spasms, which would cause constant pain as stated by the patient; that he had a definite limitation movement of the neck, and would have flare ups when his condition would worsen, and that the condition would continue in the future.

Appellant's fifth point is without merit and is overruled.

Finding no reversible error, the judgment is affirmed.