**W. J. HAMMER, Jr., Petitioner,**

v.

**DALLAS TRANSIT COMPANY, Respondent.**

No. A–10850.

Supreme Court of Texas.

March 16, 1966.

Rehearing Denied April 20, 1966.

Helm, Jones & Pletcher, Houston, for petitioner.

Turner, Atwood, Meer & Francis, Dean Carlton, Dallas, for respondent.

POPE, Justice.

Our former opinion is withdrawn and the following is substituted.

Plaintiff W. J. Hammer, Jr., recovered a judgment on a jury verdict for $25,000 for personal injuries arising out of a two-car collision. The jury found that Dallas Transit Company's bus driver was negligent in traveling on the wrong side of the road which proximately caused the collision between Hammer's vehicle and defendant's bus. The Court of Civil Appeals, in reversing the judgment of the trial court, held that plaintiff's issue "traveling on the wrong side of the road" was global; the evidence conclusively shows that defendant's bus was out of control; and the defendant was under no burden to prove that its bus was excusably out of control. 390 S.W.2d 823. We reverse the judgment of the Court of Civil Appeals.

Hammer was driving in a northerly direction toward downtown Dallas on the Houston Street Viaduct while it was raining. Transit's bus was proceeding in the opposite direction on the viaduct. The viaduct had four lanes, two for northbound traffic and two for southbound. As Hammer drove north, he approached a curve to the west. He was on his right-hand side of the center line but was in the lane near the center of the viaduct. As Transit's bus approached the curve, headed south, the driver turned from the inside or curb lane into the lane near the center of the viaduct so the bus could more easily make the turn around the curve. Instead of turning at the curve, the bus moved straight ahead, crossed the center line several feet and collided with Hammer's vehicle. There was evidence that the road was wet. No one disputes the fact that the collision occurred at a point which placed Transit's bus several feet in the wrong lane of traffic.

The jury found that (1) the traveling on the wrong side of the road by the Transit's Company's bus was negligence, (2) which was a proximate cause of the collision; (3) the bus driver failed to maintain such control of the bus as would have been maintained by a person of ordinary prudence, (4) which was a proximate cause; (5) the collision was not the result of an unavoidable accident; (6) at the time and just before the collision the bus did not skid suddenly and unexpectedly; (7) (unanswered) and (8) damages. Hammer has abandoned any claim to a judgment based upon the findings on the third and fourth issues on control by reason of our recent decision in Barclay v. C. C. Pitts Sand and

Gravel Co., 387 S.W.2d 644 (Tex.Sup. 1965).

The Court of Civil Appeals held that the first special issue was also a general charge. The issue is:

"Do you find from a preponderance of the evidence that at the time and on the occasion in question the Dallas Transit Company's bus traveling on the wrong side of the road was negligence as that term has been defined for you?"

■ It is our opinion that the issue was not general or global. It sufficiently narrows and confines the inquiry to one act out of a multitude of other possible driving faults. The findings on the first two issues constitute a basis for a judgment for the plaintiff, Hammer.

Transit argues and the Court of Civil Appeals has held that the issue is the same as one which inquires about loss of control which is a general issue that was repudiated by Barclay v. C. C. Pitts Sand and Gravel Co., supra. Its argument is as follows: Hammer proved that Transit's bus was across the center of the road; Transit proved that its bus was out of control at the time it crossed the center line; as a matter of law, this excused its presence on the wrong side of the road unless Hammer proved some specific negligent act or omission by Transit, which caused the loss of control of its bus; Hammer did not allege nor obtain findings of any specific negligent act or omission for Transit's loss of control; and Transit is therefore entitled to a judgment. Transit relies upon Barclay, supra.

■ In Barclay, we held that a finding that a defendant failed to keep his truck under proper control was global. In that case, the plaintiff relied upon the general loss-of-control issue to establish primary negligence. In this case, the plaintiff does not rely upon loss of control. His issue was that the defendant was traveling on the wrong side of the road. In this case

the defendant relied upon loss of control to prove excuse for its own negligence. Its argument is that when it proved the general and unexplained loss of control, it then cast upon the plaintiff the burden to prove the specific reasons that it, the defendant, lost control. We reject the contention. Under Barclay, we held that one may not rely upon the general and unspecified loss-of-control issue. Now the defendant relies upon the same generalized concept. Pressed to its limits, that argument would mean that one's grossly negligent loss of control, would amount to a legal excuse. The burden was upon the defendant Transit to go forward with the evidence to prove not merely its own loss of control but that the loss of control was excusable.

■ An analogous situation is found in instances in which one relies upon and proves the fact that his adversary violated a statutory standard. The one charged with such a violation may then go forward with the evidence and show excuse or justification for the violation. See Calvert, Special Issues Under Article 6701d, § 86(d), 34 Tex.L.Rev. 971, 977. But it is the one seeking to justify or excuse the violation who has the burden of going forward with the evidence. Younger Bros. v. Marino, 198 S.W.2d 109, 113 (Tex.Civ.App.1946, writ ref. n. r. e.); Jessee Produce Co. v. Ewing, 213 S.W.2d 750 (Tex.Civ.App.1948, no writ); Note, 27 Tex.L.Rev. 866. When he does so, he thrusts upon the other party the burden to obtain a finding that the violation was negligence under the common-law standard. Cunningham v. Suggs, 340 S.W.2d 369, 374 (Tex.Civ.App.1960, writ ref. n. r. e.); Phoenix Refining Co. v. Powell, 251 S.W.2d 892 (Tex.Civ.App.1952, writ ref. n. r. e.); Fisher v. Leach, 221 S.W.2d 384, 390 (Tex.Civ.App.1949, writ ref. n. r. e.); Taber v. Smith, 26 S.W.2d 722 (Tex.Civ.App.1930, no writ); Hodges, Special Issue Submission in Texas, § 25 (1959). The burden of persuasion on the whole case remains on the one relying upon the statutory violation. See Grieger v. Vega, 153 Tex. 498, 271 S.W.2d 85 (1954).

In *Phoenix,* supra, the one who was in the wrong traffic lane went forward with the evidence and proved that a suddenly deflated tire accounted for his position on the road. He proved an excuse for being on the wrong side of the road. In Dallas Transit Co. v. Tolbert, 337 S.W.2d 617 (Tex.Civ.App.1960, writ ref. n. r. e.), upon which Transit strongly relies, Tolbert proved that he proceeded after the accident into the wrong lane of traffic, because his vehicle was excusably out of control.

The Court of Civil Appeals in this case has held that the evidence conclusively showed that defendant's bus was out of control. The jury apparently did not believe defendant's explanation that the bus was out of control. It found that the bus was negligently traveling on the wrong side of the road and, contrary to defendant's contention, that it did not skid suddenly and unexpectedly. There was evidence that the road was wet and that Transit's bus skidded out of control. However, its bus driver also testified that he was driving south in the outside or curb lane until he was about seventy-five feet from the turn in the viaduct. He then "pulled the front of the bus over about two feet into the inside lane in order to make the right turn. * * *" "Well, it is a short turn and you have to pull over into the inside lane maybe two or three feet in order to get around the curve." He explained that in attempting the turn, the bus slid across the center line. There was some evidence, therefore, that Transit's bus driver directed and drove the bus from the outside lane toward the center line to make the turn.

Transit argues that it established a complete defense when it proved that its bus was out of control. It relies upon Dallas Transit v. Tolbert, supra, as did the Court of Civil Appeals, in its contention that it established a complete defense when it proved its bus was out of control. In *Tolbert* as well as this case, all jury findings were against Transit. In our opinion *Tolbert* does not support Transit's contention,

because in that case, the one charged with being on the wrong side of the road proved that his vehicle was excusably out of control. Moreover, the vehicle went out of control after the accident with the defendant; whereas in the present case, defendant's vehicle was out of control before and was the cause of the accident. We shall need to review some of the facts in the Tolbert case.

Tolbert was driving a truck south on an expressway when a Transit Company bus, also headed south on a feeder road, converged with the expressway and Tolbert's truck. When Transit's bus moved onto the expressway from the inlet road, Tolbert applied the truck brakes and tried to turn to his left to avoid hitting the bus. The truck jackknifed so that the tractor turned completely around and Tolbert, the driver, was facing north while the tractor and trailer continued to move south. Tolbert's truck continued to move across the southbound expressway; it crashed into and over the median which separated the southbound and northbound traffic; and in the northbound lane it hit another car driven by William L. Crowley. Tolbert's suit was against Transit for the events which occurred in the southbound lane, and the fact that Tolbert hit Crowley in the northbound lane are facts that are not present in our case. It was after, not before, the negligent acts of Transit, that Tolbert lost control of his truck. His being in the wrong lane of traffic with respect to Crowley was immaterial to Transit's negligence which occurred in the southbound lane. Tolbert's being in the northbound or wrong lane of traffic did not cause the original accident with Transit. It was in this context that the court discussed loss of control in Dallas Transit Co. v. Tolbert.

In *Tolbert,* the jury found that Transit was negligent in moving onto the expressway in front of Tolbert without keeping a proper lookout and also in proceeding onto the expressway before it had become reasonably safe to do so. The Court submitted contributory negligence issues

which inquired about six different acts or omissions and the jury found for the plaintiff on all of them. The Court refused to submit a contributory negligence issue which inquired whether Tolbert "drove" his truck onto his left-hand side of the expressway instead of on the right-hand side of the highway. That issue concerned a collision with Crowley who was not a party to the suit. For many reasons, *Tolbert* does not control this case. The Court of Civil Appeals held in *Tolbert* that the evidence conclusively showed that Tolbert did not "drive" into the wrong or northbound lane, because all the evidence showed that he crashed into the dividing concrete median, was knocked loose from the steering wheel and was on the floor of the cab which was moving backwards when it moved into the northbound lane. The Court held that Tolbert was not "driving" because the truck was out of control. In the present case, Transit's driver was at the wheel, driving; and he testified that he voluntarily directed the bus from the outside lane toward the inside lane. In the Tolbert case, Tolbert was in the wrong lane of traffic with respect to the Crowley vehicle, but he was not in the wrong lane of traffic with respect to defendant Transit's bus. The transaction between Tolbert and Transit occurred entirely in the southbound lane when neither vehicle was in the wrong lane of traffic. In the present case, with respect to the transaction between Hammer and Transit, Transit's bus was in the wrong lane of traffic. In *Tolbert,* the refused issue inquired about plaintiff's being in the wrong lane of traffic with respect to a person who was not a party to the litigation. In this case, the issue inquired about the defendant's being in the wrong lane of traffic with respect to plaintiff. In *Tolbert,* the one who was in the wrong lane of traffic fully excused the fact. In this case, the defendant who was in the wrong lane of traffic argues that he need not prove excuse. *Tolbert* is not applicable.

■ The Court of Civil Appeals was also of the opinion that plaintiff did not sufficiently plead that defendant was negligent in being across the center of the road. Plaintiff generally described the nature of the accident and in doing so stated that defendant's bus crashed into plaintiff's car "when said bus crossed the center dividing strip on said street." In a subsequent paragraph of the pleading, plaintiff stated several specific acts and omissions of negligence without repeating that the bus was across the center of the road. Defendant urged no exceptions to the pleadings. See Kainer v. Walker, 377 S.W.2d 613 (Tex.Sup.1964). Plaintiff called upon defendant for admissions and there was an admission that the bus was across the center of the street. Defendant knew that plaintiff was relying upon that admission. An examination of the statement of facts shows that the case was tried upon that basis by both sides. We can not say that defendant was surprised or did not have fair notice of plaintiff's theory of the case. Gulf, Colorado & Santa Fe Railway Co. v. Bliss, 368 S. W.2d 594 (Tex.Sup.1963).

■ The Court of Civil Appeals, without discussion, sustained a number of Transit's points that the jury findings are against the great weight of the evidence. This Court has no jurisdiction to rule on those points. Since the Court applied the wrong rule of law with respect to the one who had the burden to go forward with the evidence to excuse or show the reasons that defendant's bus was out of control, we remand the case to the Court of Civil Appeals for consideration of those points. Bond v. Otis Elevator Co., 388 S.W.2d 681, 687 (Tex.Sup.1965).

The judgment of the Court of Civil Appeals is reversed and the cause is remanded to that court. The motion for rehearing is overruled, and the parties are given fifteen days in which to file an additional motion for rehearing.