Samuel **LEAL** et al., Appellants,

v.

Eva Martinez **RAMIREZ** et al., Appellees.

No. 15754.

Court of Civil Appeals of Texas, San Antonio.

March 30, 1977.

Rehearing Denied April 27, 1977.

**BARROW, Chief Justice.**

This is a venue action in a suit brought under the Texas Wrongful Death Act.[1] Appellees are the surviving widow and children of Romulo Israel Ramirez, who was fatally injured in a head-on collision between his GMC pick-up and a flatbed truck owned by appellant, Milchem, Inc., which was being operated by appellant, Samuel Leal. Suit was filed by appellees in Webb County, where the accident occurred, and each appellant filed a plea of privilege. Leal is a resident of Jim Hogg County, and Milchem, Inc. is a resident of Harris County. Both pleas were overruled after a nonjury hearing and appellants have timely perfected this appeal.

Appellees urge that venue is sustainable under Subd. 9a, Art. 1995, Tex.Rev.Civ. Stat.Ann. (1954).[2] The venue facts necessary to be established by a preponderance of the evidence to maintain venue under this exception are: (1) that an act or omission of negligence occurred in Webb County; (2) that such act or omission was that of the defendant or his servant, agent, or representative acting within the scope of his employment; and (3) that such negligence was a proximate cause of the appellees' injuries. *H. E. Butt Grocery Stores, Inc. v. Norwood*, 504 S.W.2d 920 (Tex.Civ.App.— San Antonio 1974, no writ); 1 McDonald Tex.Civ. Practice, § 4.17.2 (1965). Appellees must also prove that they sustained damages under the Wrongful Death Act although they are not required to prove the amount thereof. *Theobold v. Pate*, 542 S.W.2d 460 (Tex.Civ.App.—Tyler 1976, no writ); *Bryant v. Kimmons*, 430 S.W.2d 73 (Tex.Civ.App.—Austin 1968, no writ); *Burris v. Wilson*, 363 S.W.2d 885 (Tex.Civ.App. —Amarillo 1962, no writ).

Appellants assert that there is no evidence to support the trial court's implied findings of any of these essential venue facts other than that Leal was operating the Milchem truck in the scope of his em-

Meredith & Donnell, Corpus Christi, for appellants.

J. G. Hornberger, J. G. Hornberger, Jr., Laredo, for appellees.

1. Art. 4671 et seq., Tex.Rev.Civ.Stat.Ann. (1952).

2. Appellees raised Subd. 9a, 23, and 29a in their controverting affidavits but concede that unless venue is sustainable under Subd. 9a, it is not sustainable under the other two exceptions.

ployment. Appellants urge, in the alternative, that the evidence is insufficient to support such implied findings.

The fatal collision occurred about 1:30 p. m. on Texas Highway # 359 near San Juanito Creek Bridge about 16.6 miles east of Laredo. This highway is a two-lane pavement which was wet at the time of the collision in that it was drizzling rain. Leal was proceeding east and Ramirez was proceeding west. The record is very inconclusive as to exactly what happened. Both Ramirez and his passenger were killed. Pablo Vela was about a quarter of a mile behind the Milchem truck and testified that he saw it skidding sideways before it came to a stop on the pavement. However, he not only did not witness the collision, but was unaware that there had been a collision until he stopped at the scene. Thus, the evidence relating to the cause of the collision comes from Leal and from two DPS officers who arrived at the scene of the collision about 2:50 p. m. and made an official investigation.

Leal was an "interested party" and it cannot be said that his testimony is clear, direct, and positive. Cf. *Praetorian Mutual Life Insurance Co. v. Sherman*, 455 S.W.2d 201 (Tex.1970). Leal testified that he was proceeding about 40 mph when a car operated by Victoriano Garza passed him. After this car passed him, Leal saw the pick-up approaching from the east in Leal's traffic lane. He estimated that the pick-up was about 15 feet in front of him when he first saw it. Leal stepped on the brakes and tried to turn to his left towards the north lane. As he turned to his left, the pick-up struck the Milchem truck at about the right front door. Although no effort was made to clarify his estimate of the distance between the vehicles when he first saw the pick-up, this estimate was unquestionably erroneous as demonstrated by the physical facts.[3] Victoriano Garza did not testify.

A plat was prepared by Officer Garner as a part of his investigation of the collision

and the testimony of the two officers is largely based on this plat. Both vehicles laid down extensive skid marks prior to the impact, and, from these marks, the officers determined that the point of impact was near the center of the roadway. There were 120 feet of skid marks put down by each of the four tires of the Milchem truck and 61 feet put down by Ramirez' pick-up. The officers concluded that the accident was caused by the pick-up being on its wrong side of the roadway, but such conclusion is not fully supported by the plat as drawn on the investigation report. The skid marks put down by the Milchem truck show that it was skidding sideways at about a 45 degree angle. As it skidded, the truck gradually moved to its left across the center of the roadway. The front end of the pick-up struck the right door of the Milchem truck. All of the Milchem truck forward of the right door was on Leal's left-hand side of the roadway.

The 61 feet of skid marks made by the pick-up extend in an arc from the center of the roadway down to within three feet of the south bridge railing and then back to the north to the point of impact. All of these skid marks are in the eastbound lane, which was Ramirez' left-hand side of the roadway. From these skid marks, it is seen that for about 70 or 75 feet before the point of impact, Ramirez was on his wrong side and on Leal's right-hand side of the roadway. However, the angle of the skid marks as drawn on the plat show that Ramirez had just pulled to his left across the center line and apparently had done so rather sharply just before he applied the brakes.

■ The point of impact found both vehicles, at least partly, on their wrong side of the roadway. The crucial question is which operator caused the other to take evasive action so as to excuse the operator being on his wrong side. Ramirez was killed and his version is unknown. Leal testified that he first saw the pick-up when it was in his lane of traffic and about 15 feet in front of his

---

3. Leal was obviously very poor at estimating distance in that he testified the pavement was about 200 feet wide.

truck. Obviously, he was not keeping a proper look-out, or his testimony is inaccurate. The officers expressed the opinion that Ramirez was in the wrong lane of traffic because he was driving under the influence of alcohol. This conclusion is based on the fact that Ramirez had a partially consumed can of beer in his hand at the time of the collision. Unfortunately, blood tests were not made, and there is no evidence that Ramirez had more than this can of beer prior to the collision. This meager record does not justify the conclusion that he was driving while under the influence of alcohol.

Findings of fact and conclusions of law were not filed. However, the trial judge stated in the record that, in his opinion, the plat made by the officers demonstrates that the Milchem truck was skidding to Leal's left-hand side of the roadway before Ramirez turned to his left. The trial court apparently concluded that Ramirez pulled to his left after he saw the Milchem truck skidding sideways. This conclusion is supported by the angle of Ramirez' skid together with the lengths of the respective skid marks. Ramirez was excused for being on his left-hand side of the roadway because of the conduct of Leal. See *Hammer v. Dallas Transit Co.* 400 S.W.2d 885 (Tex.1966). We conclude that there is sufficient evidence to support the implied findings of the trial court that the collision was proximately caused by the negligence of Leal.

Appellees brought this suit seeking damages only under the wrongful death statute and not as survivors of Ramirez. Recovery is limited under this Act to recover of the present monetary value of pecuniary benefits that the statutory beneficiaries had a reasonable expectation of receiving from deceased had he not been killed. *Texas Consolidated Transportation Co. v. Eubanks*, 340 S.W.2d 830 (Tex.Civ.App.—Waco 1960, writ ref'd n. r. e.); *Guitar v. Wheeler*, 36 S.W.2d 325 (Tex.Civ.App.—El Paso 1931, writ dism'd); 17 Tex.Jur.2d Death by Wrongful Act § 43 (1960).

The widow of Ramirez was ill on the day that the pleas of privilege were heard by the trial court and unable to attend the hearing. The parties stipulated that, if present, she would testify that she is the surviving widow of Ramirez and that she and six named children are the only heirs at law of the deceased. Unfortunately, there was no stipulation or evidence offered to show that Ramirez was contributing anything to his family or even that he was living with them. Thus, there is no evidence that any of the statutory beneficiaries suffered any pecuniary loss by the death of Ramirez. It has been held that since this action is purely statutory, the doctrine of nominal damages does not apply. *McGown v. International & G. N. R. Co.*, 85 Tex. 289, 20 S.W. 80 (1892).

We conclude that appellees failed to discharge their venue burden of showing that they had sustained "some damage" as a proximate result of the negligence of Leal. This failure requires a reversal of the judgment overruling appellants' pleas of privilege. *Theobold v. Pate, supra; Bryant v. Kimmons, supra.* It is apparent that the sudden illness of the widow prevented development of this phase of the case. We therefore conclude that the cause should be remanded to the trial court in the interest of justice.

The order overruling appellants' pleas of privilege is reversed and the cause is remanded to the trial court for a new trial.