**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-16-00016-CV**
_____

**DAVID N. BRIDWELL, Appellant**

**V.**

**MICHELLE GRILLETTA, Appellee**

**On Appeal from the County Court at Law No. 2**
**Orange County, Texas**
**Trial Cause No. 23215A**

**MEMORANDUM OPINION**

We issued a memorandum opinion affirming the trial court's judgment in
this case on December 8, 2016. Appellant David N. Bridwell (Bridwell or
Appellant) timely filed a motion for rehearing. We have this date now denied the
motion for rehearing. Nevertheless, we withdraw our previous memorandum
opinion and judgment issued on December 8, 2016, and substitute the following
memorandum opinion and judgment in place thereof. *See* Tex. R. App. P. 19.1(b)

1

(stating that our plenary power over a judgment expires thirty days after all timely filed motions for rehearing are overruled).

In this civil suit, Michelle Grilletta (Grilletta or Appellee), acting pro se, originally filed her claim against Bridwell in small-claims court. Grilletta alleged that Bridwell had contracted with her "to build a wooden privacy fence for $3000 [but he] did not complete [the] job." Bridwell filed a pro se general denial. Bridwell also filed a counterclaim alleging that after Bridwell had started working on the project, Grilletta announced that she had arranged for someone else to do the work, she instructed Bridwell to remove tools from the property and return her key, and she failed to pay him as agreed. Bridwell sought $4,341 in damages and $300 in attorney's fees. Grilletta prevailed in the small-claims court and Bridwell, with assistance of counsel, pursued a *de novo* appeal to the county court at law. *See* Tex. R. Civ. P. 506.

The county court at law set the matter for trial. On December 1, 2015, Grilletta appeared pro se, and Bridwell appeared in person and through his attorney. The matter was tried to the court in a bench trial. On December 2, 2015, the trial court entered a Judgment for Grilletta, awarded Grilletta $1,100, found for Grilletta on Bridwell's counterclaim, and taxed costs against Bridwell. Bridwell filed a written request for findings of fact and conclusions of law with the trial

2

court on December 4, 2015. Bridwell also filed a Motion for New Trial on December 15, 2015, and an Amended Motion for New Trial on December 22, 2015. Bridwell filed a Notice of Appeal on January 13, 2016. On January 19, 2016, Bridwell filed his notice of past due findings of fact and conclusions of law. The Motion for New Trial was overruled by operation of law. Tex. R. Civ. P. 329b(c). Bridwell raises eight issues on appeal. We affirm.

EVIDENCE AT TRIAL

Grilletta testified that she was living in Arkansas and, after her husband passed away, she decided to move to Texas. She enlisted the help of her sister, a real estate agent in Vidor, to help Grilletta find a house in Vidor. Grilletta purchased a home and closing was on September 2, 2014, but she needed a fence at the new home to secure her dogs before she could move into the new home. Grilletta testified that Bridwell had been recommended by Grilletta's sister's associates at the real estate office. Because Grilletta had temporarily returned to Arkansas, her sister Sterlene Shelton (Shelton) agreed to meet with Bridwell on Grilletta's behalf to get an estimate. According to Grilletta, her sister met Bridwell at the new house, and after a few days, Bridwell called Grilletta's sister with a verbal bid of $3,000 for a chain-link fence or $6,500 for a wooden privacy fence. Grilletta testified that her sister told Bridwell she would report back to Grilletta

3

with the bids but that Bridwell needed to provide them with something in writing, which Bridwell promised to provide. Grilletta explained at trial that she could not afford the wooden fence so she told Bridwell that she wanted the chain-link fence.

A few days later, Grilletta's sister called her and told her that Bridwell had informed her that he found a good deal on wood and that he could do the wooden privacy fence for $3,000. Grilletta testified that her sister had specifically asked that the fence be completed by November 1st because Grilletta wanted to be moved by Thanksgiving. According to Grilletta, Bridwell agreed to have the fence completed by November 1st. Grilletta testified that on September 29th, her sister gave Bridwell at his request a $2,500 check for materials and Grilletta's sister again asked for a contract or something in writing, which Bridwell agreed to provide.

According to Grilletta, her nephew stopped by the new house to check on the progress on October 25th, the nephew "had some very major concerns at that time about things that were done wrong," and the nephew suggested that Grilletta's sister should have someone else complete the fence. Grilletta's nephew called a friend in the fence business, Rick Chesser, who sent out Lannie Philmon the next day to look at the fence and provide an estimate of the cost for him to correct the problems and complete the fence.

4

Sterlene testified that she acted as Grilletta's real estate agent in Grilletta's search for a new home in Vidor. Sterlene agreed that Grilletta had not found someone to install a fence at the new home by September 8th, when Grilletta had to leave town, and Bridwell had been recommended to Sterlene by one of her co-workers and had done handyman jobs in the past for the real estate company with whom Sterlene worked. Sterlene testified that Grilletta made the decisions about the fence but that Sterlene agreed to be Grilletta's "physical presence" to handle the fencing estimate because Grilletta could not be there. Within a couple of days of Grilletta's departure on September 8th, Sterlene met with Bridwell at the new house to get an estimate for both a chain-link and wooden fence and to stress that the fence must be installed by November 1st. Bridwell told Sterlene he would get back with her in a few days with an estimate.

According to Sterlene, Bridwell called her a few days later with the estimates and Sterlene told Bridwell that Grilletta would have to make the decision. Sterlene testified that she informed Bridwell that Grilletta could not pay the amount for the wooden fence and that she had decided on the chain-link fence. Bridwell told Sterlene that he found a good deal on the wood and could put up the wood fence for $3,000. Sterlene agreed to the $3,000 estimate for the wooden fence and again asked Bridwell "for that in writing[.]"According to Sterlene,

Bridwell told her he would provide something in writing but Sterlene never received anything in writing from Bridwell. Sterlene denied ever signing a contract or knowing that Bridwell was only agreeing to do the job for $3,000 because of his expectation of future jobs from the company for which Sterlene worked.

Sterlene testified that Bridwell requested a check for $2,500 for materials and Sterlene wrote Bridwell a check on Grilletta's account for $2,500 and gave it to Bridwell. Sterlene explained that on weekends she would go to Grilletta's new house because "[i]t needed a thorough cleaning, lights replaced, minor things that I could do[,]" and that occasionally Bridwell would be there to work on the fence. Sterlene explained that at one point prior to October 25th, she spoke with one of Grilletta's new neighbors. Sterlene pointed out to Bridwell that one of the corner posts was "probably 18 inches to 2 feet over into [the neighbor's] property." According to Sterlene, she told Bridwell that it needed to be corrected, and Bridwell told her that when placing the post he had looked at a flag on the shrubs nearby instead of the iron surveyor stake with the pink flag.

Sterlene explained that on October 25th, while she was working at Grilletta's new house, Sterlene's daughter and son-in-law, Rick Chesser (Chesser), stopped by. Chesser told Sterlene he found multiple problems with the fence that he wanted to show her. Chesser pointed out that the posts were not in a straight

6

line, corner posts were not square, tiny staples had been used instead of screws, the fence boards were not level and were "rickety[,]" some posts had no concrete at all and some had dry concrete with no water, and no corner posts had been placed to hold the fence next to the house but instead the fence had been nailed into the vinyl siding. Sterlene testified that Bridwell "had had a month to work on the fence from the time I gave him a check[,]" and at "a week out from November 1st . . . the fence was nowhere near completion and needed multiple things repaired." Sterlene testified she called Bridwell and told him her concerns, and she became upset after he did not come over but "simply said he would take care of it." She asked him to come get his tools and his tractor and told him that she needed to get somebody to "correct his errors and put up a substantial fence." According to Sterlene, she called a professional fence company that came out the next day and Grilletta paid to have the fence that had been built by Bridwell torn down and a new fence installed correctly by November 7th. On cross-examination when asked how Bridwell could have possibly finished the fence by November 1st if he was told to leave, Sterlene responded, "If he had worked in a timely manner and shown up, the fence would have been done prior to October 21st. There was no way he could have finished that fence by November 1st because even a professional fence company couldn't get it done."

7

Larry Shelton (Larry), Grilletta's nephew and Sterlene's son, testified that he had gone to Grilletta's new home and was present on the day Sterlene spoke to Bridwell about the corner post being on the neighbor's property. Larry testified that at this point there were some sections that were still not completed. Larry was concerned that the fence was attached to the house and that it was outside the property line on the back corner. According to Larry, the "back run[]" of the fence was "really wavy[]" and not straight and where the fence met the front of the house, "[i]nstead of putting an end post beside the house, [Bridwell] put some hanger brackets and just attached the runners right to the vinyl siding and affixed it to the side of the house." Larry testified that he is the property claims supervisor for an insurance company and that, at least for the company for which he works, attaching the fence to the house "can affect your limits on adjacent structures [coverage] versus your homeowner's [coverage,]" which could result in being underinsured. He was also concerned that the holes in the vinyl siding could result in moisture buildup.

Christina West (West), Grilletta's neighbor, testified that she and her husband noticed that one of the posts was on their side of the property line. According to West, she and her husband brought the matter to Sterlene's and Bridwell's attention at Grilletta's on the day they noticed this problem. It was

8

agreed that the post would be moved off of West's property, and Bridwell pointed out that it would not be a problem to move the post because he does not put water in with the concrete in all of his post holes, but instead lets water from the ground seep in to set the concrete. Later that afternoon, West also witnessed Bridwell's workers trying to "eyeball[]" where to put another post along her property line, and she reminded them that there was a survey pin at the front of the property and "to avoid them having to move posts in the future, that they may want to run that string from the survey post at the back of the property to the survey post at the front of the property to make sure that the posts were set correctly on the right side of the property line, which they did." West agreed that the fence was not level, stable, or secure, and that she "could have done better [her]self." West testified that if she had been in Grilletta's position, she would have also fired Bridwell before he completed the job.

Chesser, Sterlene's son-in-law, agreed at trial that he was the person who initially expressed the most concerns to Sterlene regarding the fence. Chesser testified that he helped build several fences. After Bridwell had been working a couple of weeks on the job, Chesser noticed things about the fence at Grilletta's new house that "didn't seem right." Chesser testified that he noticed that none of the posts seemed to be in line, that a section of the fence that was finished swayed

9

back and forth about six inches when pushed and probably would not withstand a thunderstorm, many of the poles were set "very loose[]" and only with dry concrete, there was no middle crossbar, some of the boards were stapled instead of screwed, and some of the boards were pulling through the staples. Chesser explained at trial that he told Sterlene, "If it was me, I wouldn't let this guy finish the job." Chesser testified that he had a friend whose uncle owned a fence company and he contacted that friend about getting someone to correct and finish the job. According to Chesser, Lannie Philmon (Philmon) went to the property a couple of days later, met Sterlene, and said he would get back with Sterlene on what it would take to correct and finish the job.

Philmon testified that he went to Grilletta's house on October 26th and took photographs of the fence Bridwell installed. The pictures were admitted into evidence. Philmon explained how the photographs showed the fence was incomplete as well as problems with the fence such as unlevel pickets, four by fours that were not covered, the backside of the front fence had unlevel pickets and had two rails instead of three, pickets attached to warped rails were too high from the ground, posts were not lined up straight, a twelve-foot span of fencing should have been a nine-and-a-half-foot span of fencing, some pickets were on the wrong side of the waterline, and very little or no concrete had been used to set the posts.

10

According to Philmon, no part of the fence Bridwell built was usable. Philmon testified that if he had been in Grilletta's position, he would not have let Bridwell finish the job.

Philmon testified that he was able to salvage most of the lumber that Bridwell had left on the property, but that some of it was damaged from being on the ground too long. Philmon explained at trial that the estimate totaled $3,270, which included $300 to remove the fence and for some hardware that Bridwell had not purchased. Philmon testified that he and Rick Safer alone erected the new fence on Grilletta's property, that it took about five days to complete, and that it was finished on November 7th.

Bridwell testified that he agreed to do the job for $3,000 because he had previously done four or five "odd jobs" for the real estate company for which Sterlene worked, and his bid would have been $6,500 if it had not been for the fact that he wanted to get other jobs from the company. Bridwell testified that he spent about $1,700 on materials and $35 for fence brackets, and because he did not own an auger to drill holes for fence posts, he purchased an auger for $240.85. According to Bridwell, he would have lost about $500 on the job but he was doing the job in hopes of getting other business. A statement prepared by Bridwell of his expenses and work he and his workers did was admitted into evidence. Bridwell

11

testified that he did give Sterlene a written contract but never got it back. According to Bridwell, the contract included that he would do the job to the best of his ability for $3,000 because it was an expensive fence.

Bridwell testified that he was fired on October 24th or 25th, a week before the November 1st deadline, and he would have had time to finish the job. He testified that he corrected the problem of the post that was on the neighbor's property but that he did not get to any other complaints about the fence because he was told he was fired. Bridwell testified that, when he was fired, he was told someone had shaken the fence posts and said they were moving in the ground and that Sterlene was unhappy that he had used dry concrete in the post holes. According to Bridwell, he sometimes dry packs the posts if the ground is saturated and that he properly used this technique because of the amount of rain that had fallen. He became concerned when he heard that someone had shaken the fence, that his work was being sabotaged, and that shaking would cause the fence to be loose and crooked if not set up yet. Bridwell testified that he asked Sterlene if she would let him finish the job and "fix anything you have any problems with[,]" and Sterlene agreed. According to Bridwell, she called back five minutes later and said she was hiring someone else and that Bridwell needed to remove his things from

the property. Bridwell explained at trial that he had put up wood fencing before and had never before received complaints about his wood fencing.

Bridwell testified that he had countersued Grilletta for not allowing him to finish the job and for the $500 he had not been paid. Bridwell introduced into evidence photographs he had taken when he was fired that he described as depicting what he had completed and the material left on the property. Bridwell also introduced photographs of what the fence looked like at the time of trial, from which he then testified regarding which portions he completed. Bridwell explained that the photographs show there were no new holes dug for posts so they could not have been moved.

ISSUES ON APPEAL

In his first issue, Bridwell argues that trial court's failure to file findings of fact and conclusions of law "constitute[d] harmful reversible error[.]" In his second issue, Bridwell contends the trial court abused its discretion in denying Bridwell's motion for new trial. In his third issue, he argues that the trial court erred in entering a judgment in favor of Grilletta because the judgment was based on evidence that the quality of Bridwell's work was poor and the fence had to be removed, which he contends were "un-plead allegations absent trial by consent." In his fourth and fifth issues, Bridwell challenges the trial court's admission of

13

evidence about the quality of his work and evidence regarding the cost to remove the fence Bridwell built. In his sixth issue, Bridwell challenges the factual sufficiency of the evidence supporting that Bridwell "did not complete the job[.]" In his seventh and eighth issues, Bridwell asserts that the trial court erred in denying his counterclaim and his claim for attorney's fees. We address Bridwell's issues together.

ABSENCE OF FINDINGS OF FACT AND CONCLUSIONS OF LAW

In a case tried without a jury, a party may ask the trial court to file written findings of fact and conclusions of law. Tex. R. Civ. P. 296. The request must be filed with the court clerk within twenty days after the trial court signs its judgment, and the clerk shall immediately call the request to the trial court's attention. *Id.* The trial court shall file its findings within twenty days after the filing of a timely request. Tex. R. Civ. P. 297. If the trial court fails to file its findings within the time period set forth in the rule, the requesting party shall, within thirty days after filing the original request, file with the clerk a notice of past due findings. *Id.* Once this notice of past due findings is filed, the time for filing findings is extended to forty days from the date of the original request. *Id.*

When the requesting party fails to timely file a notice of past due findings, the failure to timely file the past due notice is treated as a waiver of the right to

14

complain of the trial court's failure to file findings of fact and conclusions of law. *Las Vegas Pecan & Cattle Co. v. Zavala Cty.*, 682 S.W.2d 254, 255 (Tex. 1984); *David Rafes, Inc. v. Huml*, No. 01-08-00856-CV, 2009 Tex. App. LEXIS 8350, at **7-8 (Tex. App.—Houston [1st Dist.] Oct. 29, 2009, no. pet.) (mem. op.); *Potter v. Mullen*, No. 05-04-00014-CV, 2005 Tex. App. LEXIS 4304, at **5-6 (Tex. App.—Dallas June 3, 2005, pet. denied) (mem. op.); *Ohio Cas. Grp. v. Risinger*, 960 S.W.2d 708, 712 (Tex. App.—Tyler 1997, writ denied); *Fleming v. Taylor*, 814 S.W.2d 89, 91 (Tex. App.—Corpus Christi 1991, no writ). Bridwell untimely filed a notice of past due findings with the trial court outside of the thirty-day time period. *See* Tex. R. Civ. P. 297. Therefore, he waived the right to complain of the trial court's failure to file findings of fact and conclusions of law. *See Zavala Cty.*, 682 S.W.2d at 255; *Huml*, 2009 Tex. App. LEXIS 8350, at **7-8; *Potter*, 2005 Tex. App. LEXIS 4304, at **5-6; *Risinger*, 960 S.W.2d at 712; *Fleming*, 814 S.W.2d at 91.

Even if a party timely files a notice of past due findings, the trial court's failure to file requested findings is not harmful error if the appellate record affirmatively shows that the complaining party suffered no injury. *Tenery v. Tenery*, 932 S.W.2d 29, 30 (Tex. 1996). An appellant is harmed if, under the circumstances of the case, the appellant must guess at the reason the trial court

15

ruled against him. *Midwest Med. Supply Co., L.L.C. v. Wingert*, 317 S.W.3d 530, 535 (Tex. App.—Dallas 2010, no pet.); *Gen. Elec. Capital Corp. v. ICO, Inc.*, 230 S.W.3d 702, 711 (Tex. App.—Houston [14th Dist.] 2007, pet. denied). The appellate record affirmatively establishes that Bridwell has not been harmed by the failure of the trial court to file findings of fact and conclusions of law because the evidence presented at trial sufficiently supports the trial court's judgment. Bridwell is not required to guess as to why the trial court ruled against him. *See Midwest Med. Supply*, 317 S.W.3d at 535.

We overrule Bridwell's appellate complaint regarding the lack of findings from the trial court.

SUFFICIENCY OF THE EVIDENCE

If the trial court files no findings of fact, all findings necessary to the court's judgment, if supported by record, will be implied. *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 842 (Tex. 2000). If the appellate record contains both the reporter's and clerk's records, the trial court's implied findings are not conclusive and may be challenged for legal and factual sufficiency. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002). We conduct a sufficiency review of a trial court's findings of fact under the same standards as those applicable to jury findings. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991).

16

Under a legal sufficiency review, we determine whether the evidence presented at trial would enable reasonable and fair-minded people to reach the ruling under review. *Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 770 (Tex. 2010) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005)). We view the evidence in the light most favorable to the trial court's implied findings and indulge every reasonable inference that would support them. *Wilson*, 168 S.W.3d at 822. We credit favorable evidence if a reasonable factfinder could and disregard contrary evidence unless a reasonable factfinder could not. *Id.* at 827. A legal sufficiency challenge fails when there is more than a scintilla of evidence to support the trial court's findings. *Marchand*, 83 S.W.3d at 795.

Under a factual sufficiency review, we consider and weigh all of the evidence and will reverse only when the implied findings are so against the great weight and preponderance of the evidence as to make the judgment clearly wrong and unjust. *Wilson*, 168 S.W.3d at 826. "When a party without the burden of proof challenges the factual sufficiency of the evidence to support an adverse finding, the party must demonstrate that there is insufficient evidence to support the adverse finding." *Long v. Long*, 196 S.W.3d 460, 464 (Tex. App.—Dallas 2006, no pet.). The factfinder is the sole judge of the credibility of the witnesses and the weight to

17

give their testimony. *See Wilson*, 168 S.W.3d at 819. An appellate court cannot impose its own opinion to the contrary. *Id.*

The pro se petition Grilletta filed in small-claims court alleged that Bridwell had agreed "to build a wooden privacy fence for $3000 [but] did not complete [the] job." At trial, Bridwell testified that he had entered into an agreement with Grilletta to build a wooden fence. Bridwell claimed at trial that he was not allowed to complete the job because Grilletta breached the agreement when Sterlene, acting for Grilletta, instructed him to stop work and remove his equipment from Grilletta's property prior to the agreed-upon deadline. Grilletta's position at trial was that Bridwell materially breached the contract by not building the fence in a good and workmanlike manner, and that she was forced to terminate him and hire someone else to build the fence.

"It is a fundamental principle of contract law that when one party to a contract commits a material breach of that contract, the other party is discharged or excused from further performance." *Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.3d 195, 196 (Tex. 2004) (citing *Hernandez v. Gulf Group Lloyds*, 875 S.W.2d 691, 692 (Tex. 1994)). Only a material breach by the defendant will operate to discharge plaintiff's duty of performance. *See Hernandez*, 875 S.W.2d at 693. A material breach is one that deprives the plaintiff of the benefit that could

18

have been reasonably anticipated from defendant's full performance. *Id*. Whether a party's breach of contract is so material as to render the contract unenforceable is a question of fact to be determined by the trier of fact. *See Henry v. Masson*, 333 S.W.3d 825, 835 (Tex. App.—Houston [1st Dist.] 2010, no pet.). At the conclusion of the parties' presentation of evidence, the trial court pronounced the following:

> [T]he Court will enter judgment in favor of the plaintiff, Ms. Grilletta. The Court will award damages in the amount of $1,100. She paid Mr. Bridwell 2,500; but I'm going to subtract 1,700 for the cost of those materials that the other company was able to use; and then I added another figure for the cost to Ms. Grilletta to tear down what Mr. Bridwell had put up.
> So, that will be the order of the Court.

After reviewing the record and viewing the evidence in the light most favorable to the trial court's implied findings and indulging every reasonable inference that would support them, we conclude that the trial court could have reasonably determined Bridwell materially breached the contract, and as a result, Grilletta was justified in terminating the agreement with Bridwell and Grilletta was discharged from any further performance under the agreement. *See Mustang Pipeline Co., Inc.,* 134 S.W.3d at 198-200; *Hernandez*, 875 S.W.2d at 692 ("A fundamental principle of contract law is that when one party to a contract commits a material breach of that contract, the other party is discharged or excused from any obligation to perform.").

19

We have carefully examined the entire record and all the evidence and we cannot say that the implied findings of the trial court are so against the great weight and preponderance of the evidence as to be manifestly wrong and unjust. *Wilson*, 168 S.W.3d at 826. Additionally, regarding the counterclaim, as a counterclaimant, Bridwell had the burden to prove that Grilletta breached the contract and that he was entitled to damages and attorney's fees. *See, e.g.*, *Certain Underwriters at Lloyd's v. KKM, Inc.*, 215 S.W.3d 486, 489 (Tex. App.—Corpus Christi 2006, on pet.) (party asserting breach of contract claim bears burden of proof). After reviewing the appellate record, the trial court could have reasonably concluded that Bridwell did not meet his burden on his counterclaim. The trial court's judgment is supported by sufficient evidence.

### ADMISSION OF CERTAIN EVIDENCE

Bridwell asserts that he was prejudiced by the trial court's admission of evidence regarding the "poor quality of work" Bridwell provided because such evidence was not supported by Grilletta's pleading. We review the trial court's evidentiary rulings for an abuse of discretion. *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998); *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753 (Tex. 1995). The trial court abuses its discretion when it acts without reference to any guiding rules or principles such that its ruling is arbitrary

20

or unreasonable. *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007). Texas adheres to the fair notice pleading standard. *Stoner v. Thompson*, 578 S.W.2d 679, 683 (Tex. 1979). A plaintiff's petition must contain "a short statement of the cause of action sufficient to give fair notice of the claim involved[.]" Tex. R. Civ. P. 47(a). Pleadings are to be liberally construed in favor of the pleader when the complaining party has not filed special exceptions to the pleadings. *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 897 (Tex. 2000); *Bank One, Tex., N.A. v. Stewart*, 967 S.W.2d 419, 430 (Tex. App.—Houston [14th Dist.] 1998, pet. denied) (op. on reh'g). In liberally construing the pleadings, "[a] court should uphold the petition as to a cause of action that may be reasonably inferred from what is specifically stated[.]" *Boyles v. Kerr*, 855 S.W.2d 593, 601 (Tex. 1993); *see also Gulf Colo. & Santa Fe Ry. Co. v. Bliss*, 368 S.W.2d 594, 599 (Tex. 1963) (the court will look to the intention of the pleading party and uphold the petition even if some element of a cause of action has not been specifically alleged). The rules of civil procedure require that Grilletta's petition must give "fair notice" of the claim asserted to provide Bridwell with enough information to enable him to prepare a defense or answer to the claim. *See Horizon/CMS Healthcare*, 34 S.W.3d at 897; *Bank One, Tex.*, 967 S.W.2d at 430; *see also* Tex. R. Civ. P. 45(b), 47(a). It is the responsibility of the defendant to file special exceptions to the petition and

obtain a ruling thereon if he challenges the specificity of the allegations in the plaintiff's petition, or he waives the right to complain about the specificity of the pleading on appeal. Tex. R. Civ. P. 90.

In the small-claims court, Grilletta generally alleged that Bridwell contracted "to build a wooden privacy fence for $3000 [but] did not complete [the] job." Bridwell did not object at trial to the complained-of evidence regarding the poor quality of his work, and Bridwell did not file any special exceptions to Grilletta's petition. Liberally construing Grilletta's claim in her petition, and considering that Bridwell failed to file special exceptions to challenge the specificity of the allegations, we conclude that the judgment was based on allegations that were sufficiently alleged in the pleadings. Bridwell also failed to make this objection at trial and he failed to allege or demonstrate that he was unfairly surprised or prejudiced by Grilletta's theory of the case or the complained-of evidence. *See Hammer v. Dallas Transit Co*., 400 S.W.2d 885, 889 (Tex. 1966); *see also Horizon/CMS Healthcare*, 34 S.W.3d at 897; *Bank One, Tex.*, 967 S.W.2d at 430. The trial court did not abuse its discretion in admitting the evidence.

DENIAL OF MOTION FOR NEW TRIAL

Bridwell complains on appeal that the trial court erred in denying his motion for new trial because he had discovered new evidence. According to his appellate

22

brief, he argued his motion for new trial at a hearing held on or about January 4, 2016. Bridwell contends that "Appellant brought to the Court's attention New Evidence contained in Appellee's response to the Motion for New Trial where Appellee changed her position on her 'Breach of Contract' claim as plead in her petition, to stating that '[i]t's not possible that . . . Defendant breached a contract since none existed.'"

We review the denial of a motion for new trial for an abuse of discretion. *See Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 813 (Tex. 2010). "A party seeking a new trial on grounds of newly-discovered evidence must demonstrate to the trial court that (1) the evidence has come to its knowledge since trial, (2) its failure to discover the evidence sooner was not due to lack of diligence, (3) the evidence is not cumulative, and (4) the evidence is so material it would probably produce a different result if a new trial were granted." *Id.* The appellate record here does not include a reporter's record for the hearing on the motion for new trial. Assuming Bridwell made the argument he articulates in his appellate brief to the trial court, he failed to show the "evidence" he identifies would constitute "newly-discovered evidence," and he has not established that his failure to discover the evidence sooner was not due to lack of diligence, that the evidence was not otherwise cumulative, or that the evidence is so material it would probably produce

23

a different result if a new trial had been granted. *See* Tex. R. App. P. 38.1(i). We conclude that the trial court did not abuse its discretion in denying the motion for new trial.

We overrule Bridwell's issues one through eight. We affirm the trial court's judgment.

_____
LEANNE JOHNSON
Justice

Submitted on November 28, 2016
Opinion Delivered January 19, 2017

Before McKeithen, C.J., Kreger and Johnson, JJ.